Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Jefferson College was incorporated on the fifteenth of January, 1802, by the name of the Trustees of Jefferson College in Canonsburg in the county of Washington, for the education of youth in the learned languages and the arts, sciences, and useful literature. By the charter, it was declared that the trustees should be a body politic and corporate, with perpetual succession, in deed and in law, to all intents and purposes whatsoever, and that the constitution of the college “shall not be altered or alterable by any ordinance or law of the said trustees, nor in any other manner than by an act of the legislature of the Commonwealth.”
 

 Washington College was incorporated on the twenty-
 
 *210
 
 eighth of March, 1806, by the name of The Trustees of Washington College for the education of youth in the learned and foreign languages, the useful arts, sciences, and literature, and was located in the town of Washington, seven miles distant from Jefferson College, in the same county.
 

 Experience showed in the progress of events that the interests of both institutions would be promoted in their union, and the friends of both united in a common effort to effect that object. Application was accordingly made to the legislature for that purpose, and on the fourth of March, 1865, the legislature passed the “Act to unite the colleges of Jeffersou and Washington, in the county of Washington, and to erect the same into one corporation under the name of Washington and Jefferson College.” Enough is stated in the preamble of the act to show that the application was made to promote the best interests of both institutions, and that the legislative act which is the subject of complaint was passed at their united request and to sanction the union which their respective trustees had previously agreed to establish. Inconveniences resulted from the provisions contained in the thirteenth section of the act, which impliedly forbid an}' change in the sites of the respective colleges, and also provided that the studies of certain classes of the students should be pursued at each of the two institutions, and to that end prescribed certain rules for appropriating to each certain portions of the income derived from the funds of the institution, and the manner in which the same should be expended and applied by the trustees. Such embarrassments increasing, the legislature passed a supplementary act, providing that the several departments of the two colleges should be closely united, and that the united institution should be located as therein prescribed. Measures were also prescribed in the same act for determining the location of the united institution, and it appears that those measures, when carried into effect, resulted in fixing the location at Washington, in the county of the same name. Certain parties are dissatisfied with the new arrangement, and
 
 *211
 
 it appears that, on the twenty-fourth of August, 1869, three bills in equity were filed, in the State court, praying that the last-named act of the legislature may be declared null and void as repugnant to the ninth article of the constitution of the State, and to the tenth section of the first article of the Federal Constitution. Different parties complain in each of the several cases, but the subject-matter of the complaint involves substantially the same considerations in all the cases. Those complaining in the first case are the trustees of Jefferson College. Complainants in the second case are certain members of the board of trustees of Washington and Jefferson College, who oppose the provisions of the act of the twenty-sixth of February, 1869, and deny that the board of trustees, even by a vote of two-thirds of the members, as therein required, can properly remove the college or dispose of the college buildings as therein contemplated. Objections are made by the complainants iu the last case to both the before-mentioned acts of the legislature, and they claim the right to ask the interposition of the court, upon the ground that they are owners of certain scholarships in Jefferson College, as more fully set forth in the bill of complainant, and they pray that both of the said acts of Assembly may be declared null and void for the same reasons as those set forth in the other two cases.
 

 I. Examination of these cases will be made in the order they appear on the calendar, commencing with the case in which the trustees of Jefferson College are the complainants. They bring their bill of complaint against the two colleges as united, under the first act of Assembly passed for that purpose. Service was made and the respondents appeared and pleaded in bar that the complainants, as such trustees, duly accepted the act of Assembly creating the union of the two institutions, and that having accepted the same they, as a corporation, became dissolved and ceased to exist, and have no authority to maintain their bill of complaint. Apart from the plea in bar they also filed an answer, but as the whole issue is presented in the plea in bar it will not be necessary to enter into those details. Opposed to that plea
 
 *212
 
 is the replication of the complainants, in which they deny the allegation that they, as a corporation, became dissolved or that they ceased to exist as alleged in the plea in bar, and renew their prayer for relief. Both parties were heard, and the Supreme Court of the State entered a decree for the respondents, dismissing the bill of complaint. Decrees for the respondents were also entered in the other two cases, and the respective complainants sued out writs of error under the twenty-fifth section of the Judiciary Act, and removed the respective causes into this court for re-examination.
 

 "Whether the act of Assembly in question in this case is or not repugnant to the constitution of the State is conclusively settled against the complainants by the decision in this very case, and the question is not one open to re-examination in this court, as it is not one of Federal cognizance in a case brought here by a writ of error to a State court. Nothing, therefore, remains to be examined but the second question presented in the pleadings, which is, whether the supplementary act of Assembly uniting the two institutions and providing that there should be but one location of the same for any purpose, impairs the obligation of the contract between the State and the corporation of Jefferson College, as created by the original charter; or, in other words, whether it is repugnant to the tenth section of the first article of the Federal Constitution.
 

 Corporate franchises granted to private corporations, if duly accepted by the corporators, partake of the nature of legal estates, as the grant under such circumstances becomes a coutract within the protection of that clause of the Constitution which ordains that no State shall pass any law impairing the obligation of contracts.
 
 *
 
 Charters of private corporations are regarded as executed contracts between the government and the corporators, and the rule is well settled that the legislature cannot repeal, impair, or alter such a
 
 *213
 
 charter against the consent or without the default of the corporation judicially ascertained and declared.
 
 *
 
 Of course these remarks apply only to acts of incorporation which do not contain any reservations or provisions annexing conditions to the charter modifying and limiting the nature of the contract. Cases often arise where the legislature, in granting an act of incorporation for a private purpose, either make the duration of the charter conditional or reserve to the State the power to alter, modify, or repeal the same at pleasure. Where such a provision is incorporated in the charter it is clear that it qualifies the grant, and that the subsequent exercise of that reserved power cannot be regarded as an act within the prohibition of the Constitution. Such a power also, that is the power to alter, modify, or repeal an act of incorporation, is frequently reserved to the State by a general law applicable to all acts of incorporation, or to certain classes of the same, as the ease may be, in which case it is equally clear that the power may be exercised whenever it appears that the act of incorporation is one which falls -within the reservation and that the charter was granted subsequent to the passage of the general law, even though the charter contains no such condition nor any allusion to such a reservation.
 
 †
 
 Reservations in such a charter, it is admitted, may be made, and it is also conceded that where they exist the exercise of the power reserved by a subsequent legislature does not impair the obligation of the contract created by the original act of incorporation. Subsequent legislation altering or modifying the provisions of such a charter, wdiere there is no such reservation, is certainly unauthorized if it is prejudicial to the rights of the corporators, and was passed w-ithout their assent, but the converse of the proposition is also true, that if the new provisions altering and modifying the charter were passed with the assent of the corporation and they were duly accepted
 
 *214
 
 by a corporate vote as amendments to the original charter they cannot be regarded as impairing the obligation of the contract created by the original charter.
 
 *
 
 Private charters or such as are granted for the private benefit of the corporators are held to be contracts because they are based for their consideration on the liabilities and duties which the corporators assume- by accepting the terms therein specified, and the grant of the franchise on that account can no more be resumed by the legislature or its benefits diminished or impaired without the assent of the corporators than any other grant of property or legal estate, unless the right to do so is reserved in the act of incorporation or in some general law of the State which was in operation at the time the charter was granted.
 
 †
 

 Apply those principles to the case under consideration and it is quite clear that the decision of the State court was correct, as the fifth section of the charter, by necessary implication, reserves to the State the power to alter, modify, or amend the charter without any prescribed limitation. Provision is there made that the constitution of the college shall not be altered or alterable by any ordinance or law of the trustees, “ nor in any other manner than by an act of the legislature of the Commonwealth,” which is in all respects equivalent to an express reservation to the State to make any alterations in the charter which the legislature in its wisdom may deem fit, just,, and expedient to enact, and the donors of the institution are as much bound by that provision as the trustees.
 
 ‡
 

 
 *215
 
 Suppose, however, the fact were otherwise, still the re spondents must prevail, as it is admitted that the complain* ants accepted the act passed to unite the two colleges and to erect the same into one corporation, which supports to every intent the respondents’ plea in ba,r and utterly disproves the allegations of the complainants’ replication denying that the complainant corporation was dissolved before their bill of complaint was filed. Doubts have often been expressed whether a private corporation can be dissolved by the surrender of its corporate franchise into the hands of the government, but the question presented in this case is not of that character, as the act of the legislature uniting the two colleges did not contemplate that either college as an institution of learning should cease to exist, or that the funds of either should be devoted to any other use than that described in the original charters. All that was contemplated by the act in question was that the two institutions should be united in one corporation, as requested by the friends and patrous of both, that they might secure greater patronage and be able to extend their usefulness and carry out more, effectually the great end and aim of their creation. Authorized as the act of the legislature was by the reservation contained in the original charter, and sanctioned as the act was by having been adopted by the corporators, it is clear to a demonstration that the act uniting the two colleges was a valid act, and that the two original corporations became merged in the one corporation created by the amendatory and enabling act passed for that purpose, and that neither of the original corporations is competent to sue for any cause of action subsequent in date to their acceptance of the new act of incorporation.
 
 *
 

 II. Sufficient has already been remarked to show that the case of the dissenting trustees of the new corporation, which is the second case, is governed by the same principles as the preceding ease. They admit that the act of the legislature
 
 *216
 
 uniting the two colleges iu one corporation was duly accepted by the origiual corporators, aud they also admit in effect that it is a valid law. Express provision was therein made that the two colleges should be united in one corporation by the name of Washington and Jefferson College, aud that the new corporation should possess aud enjoy all the capacities, powers, privileges, immunities, aud franchises which were possessed and enjoyed by the original institutions and the trustees thereof, “ with such enlargements and subject to such changes therein U3 are made by this act.” Accepted as that act was by the trustees of the original institutions, they not only ratified the reservation contained in the fifth section of the charter of Jefferson College, but they in express terms adopted the changes made iu the amended charter uniting the two institutions iu one corporation.
 

 Viewed in the light of these suggestions the present case stands just as it would if the reservation contained in the original charter had been in terms incorporated into the new charter uniting the two institutions into one corporation, which the complainants in this case admit is a valid act of the legislature. Such an admission, however, is not necessary to establish that fact, as the act was passed by the assent of the two corporations aud in pursuance of the reserved power to that effect contained iu the original charter of the corporation to which the complaining corporators in the preceding case belonged. Grant that the power existed in the legislature to pass the act uniting the two institutions aud it follows that the supplementary act which was passed to render the first act practically available is also a rightful exercise of legislative authority, as it is clear that substantially the same reservation is contained iu the act providing for the union of the two institutions as that contained in the original charter by virtue of which the act was passed uniting the two institutions in one corporation.
 
 *
 
 Tested by these considerations the court here is of the opinion that
 
 *217
 
 the decision of the State court in the second case is also correct.
 

 III. Plans of various kinds were devised by the trustees of Jefferson College and put in operation for the endowment of the institution; and, among others, was the plan of establishing what was called the scholarships, whereby a contributor on payment of twenty-five dollars became entitled to tuition for one person for a prescribed period, called a right to a single scholarship; or, on payment of fifty dollars, to a family scholarship; or, on payment of one hundred dollars, to tuition for thirty years; or, on payment of four hundred dollars, to a perpetual scholarship, to be designated by whatever name the contributor might select. Contracts of the kind were outstanding at the respective times when each of the two acts of the legislature in question was passed, and the complainants in the third case are owners of such scholarships, and they bring their bill of complaint, for themselves and such other persons owning such scholarships as may desire to unite in the bill for the relief therein prayed. They pray that both of the before-mentioned acts of the legislature may be declared null and void as repugnant both to the State and Federal Constitution, but it will be sufficient to remark, without entering into any further explanations, that the second question is the only one which can bo re-examined in this court. "What they claim is that the acts of the legislature in question impair the obligation of their contracts for scholarship as made with the trustees of Jefferson College before the two institutions were united in one corporation. Deference must be made to the charter creating the union as well as to the original charters in order to ascertain whether there is any foundation for the allegations of the bill of complaint.
 

 By the first section of the act creating the union it is provided that the new corporation “ shall possess and enjoy all the capacities, powers, privileges, immunities, and franchises which were conferred upon and held by said colleges of Jefferson and Washington and the trustees thereof’ with such enlargements and subject to such changes therein as are
 
 *218
 
 made by this act.” Section two also provides that all the real and personal property held and possessed by or in trust for the said colleges, with all endowment funds, choses in action, stocks, bequests, and devises, and all other rights whatever to them belonging, are thereby transferred to and vested in the new corporation; and the further provision is that “all the several liabilities of said two colleges or corporations, by either of them suffered or created, including the scholarships heretofore granted by and obligatory upon each of them, are hereby imposed upon and declared to be assumed by the corporation hereby created, which shall discharge and perform the. same without diminution or abatement.”
 

 Undoubtedly the corporate franchises of the two institutions were contracts of the description protected by that clause of the Constitution which ordains that no State shall pass any law impairing the obligation of contracts, but the contract involved in such an act of incorporation is a contract between the State and the corporation, and as such the terms of the contract may, as a general rule, be altered, modified, or amended by the assent of the corporation, even though the charter contains no such reservation and there was none such existing in any general law of the State at the time the charter was granted. Persons making contracts with a private corporation know that the legislature, even without the assent of the corporation, may amend, alter, or modify their charters in all cases where the power to do so is reserved in the charter or in any antecedent general law in operation at the time the charter was granted, and they also know that such amendments, alterations, and modifications may, as a general rule, be made by the legislature with the assent of the corporation, even in cases where the charter is unconditional in its terms and there is no general law of the State containing any such reservation. Such contracts made between individuals and the corporation do not vary or in any manner change or modify the relation between the State and the corporation in respect to the right of the State to alter, modify, or amend such a charter,
 
 *219
 
 as the power to pass such laws depends upon the assent of the corporation or upon some reservation made at the time, as evidenced by some pre-existing general law or by an express provision incorporated into the charter. Cases arise undoubtedly where a court of equity will enjoin a corporation not to proceed under an amendment to their charter passed by their assent, as where the effect would be to enable the corporation to violate their contracts with third persons, but no such question is here presented for the decision of this court, nor can it ever be under a writ of error to a State court. Questions of that kind are addressed very largely to the judicial discretion of the court and create the necessity for inquiry into the facts of the case and for an examination into all the surrounding circumstances.
 
 *
 
 Beyond doubt such a question may be presented in the Circuit Court in the exercise of its jurisdiction, concurrent with the State courts, but it is clear that such a question can never be brought here for re-examination by a writ of error to a State court, as such a writ only removes into this court the questions, or some one of the questions, described in the twenty-fifth section of the Judiciary Aet.
 
 †
 
 Considerations of that kind must, therefore, be dismissed, as the only question presented for decision is whether the acts of the legislature mentioned in the bill of complaint impair the obligation of the contracts for scholarship made by the complainants with the trustees of Jefferson College'.
 

 Decided cases are referred to in which it is held that the trustees"of such an institution, where the terms of the charter amount to a contract and the charter contains no reservation of a right to alter, modify, or amend it, cannot consent to any change in the charter made by the legislature, which contemplates a diversion of the funds of the institution to any other purpose than that described and declared in the original charter. All, or nearly all of such decisions are based on a state of facts where an attempt was made to take
 
 *220
 
 the control of such an institution from one religious sect or denomination and to give the control of it to another and a different sect or denomination, in violation of the intent and purpose of the original donors of the institution.
 
 *
 
 Questions of that kind, however, are uot involved in the present record, nor do the court intend to express any opinion in respect to such a controversy. Charters of the kind may certainly be altered, modified, or amended in all cases where the power to pass such laws is reserved in the charter or in some antecedent general law, nor can it be doubted that the assent of the corporation is sufficient to render such legislation valid, unless it appears that the new legislation will have the effect to change the control of the institution, or to divert the fund of the donors to some new use inconsistent with the intent, and purpose for which the endowment was originally made.
 
 †
 
 Consent of the corporation, it is conceded, is sufficient to warrant alteration, modification, and amendments iu the charters of moneyed, business, and commercial corporations, and it is not perceived that the question presented in this record stands upon any different footing from such as arise out of legislation of that character, as the principal objection to the legislation in question is that the removal of Jefferson College to the newly selected location exposes the complainants, as owners of the scholarships, to increased expense and to additional inconvenience.
 
 ‡
 
 They do not pretend that the effect of the new legislation will be to lessen the influence and usefulness of the college, or to divert the funds to a different purpose from that which was intended by the donors, nor that it will have the effect to change the character of the institution from the original purpose and design of its founders. Pretences of the kind, if set up, could not be supported, as the whole record shows that the two acts of Assembly were passed at the earnest solicitation of the patrons of the two institutions as well as at the request of the respective boards of trustees.
 

 
 *221
 
 Even suppose that the consent of the corporation is no answer to the objections of the complainants, still the decree of the State court must be affirmed, as it is clear that the reservation in the charter fully warranted the legislature in passing both the acts which are the subject of complaint.
 
 *
 
 Suggestion may be made that the reservation even in the original charter is not expressed in direct terms, but the terms are the same as those employed in the charter which was the subject of judicial examination in the case of
 
 Commonwealth
 
 v.
 
 Bonsall et
 
 al.,
 
 †
 
 which was decided more than thirty years ago by the Supreme Court of the State. Provision was made in the charter in that case that the constitution of a certain public school should not be altered or alterable by any law of the trustees, or in any other manner than by an act of the legislature of this State. When incorporated the charter of the school provided that the trustees should be chosen by such persons as had contributed or should contribute to the amount of forty shillings for the purposes of the corporation. Pursuant to the petition of the trustees the legislature passed an act which repealed that clause of the charter, and provided that all the citizens residing within the limits of the township should be entitled to vote at all such elections, and the Supreme Court of the State held unanimously that the act of Assembly was a valid act, even though it was not accepted by the corporation. Reference is made to that case to show that the clause in the charter of Jefferson College, called the reservation, furnished complete authority to alter, modify, or amend the charter, and certainly it must be conceded that that case is a decisive authority to that point.
 
 ‡
 

 Controlled by these reasons the court is of the opinion that the act uniting the two colleges in one corporation was a valid act even as against the complainants in the third case.
 

 
 *222
 
 They complain also of the supplementary act, but they hardly contend that the legislature, in passing the act to unite the two institutions, parted with any power which was reserved in the original charter of Jefferson College to enact any proper law to alter, modify, or amend the act providing for that union. Extended argument upon that topic does not seem to be necessary, as there is not a word in the act which favors such a construction or which gives such a theory the slightest support. Proper care was taken by the legislature to protect the rights of these complainants by incorporating into the act uniting the two colleges a provision that the new corporation should discharge and perform those liabilities without diminution or abatement. Such contracts were made with the trustees and not with the State, and it is a mistake to suppose that the existence of such a contract between the corporation and an individual would inhibit the legislature from altering, modifying, or amending the charter of the corporation by virtue of a right reserved to that effect, or with the assent of the corporation, if, in view of all the circumstances, the legislature should see fit to exercise that power.
 

 Decree in each case affirmed.
 

 *
 

 Dartmouth College
 
 v.
 
 Woodward,
 
 4
 
 Wheaton, 700.
 

 *
 

 Fletcher
 
 v.
 
 Peck, 6 Cranch, 136; Terrett
 
 v.
 
 Taylor, 9 Id. 51.
 

 †
 

 Dartmouth College
 
 v.
 
 Woodward, 4 Wheaton, 708; General Hospital v. Insurance Co., 4 Gray, 227; Suydam
 
 v.
 
 Moore, 8 Barbour, 358; Angel
 
 &
 
 Ames on Corporations (9th ed.), § 767, p. 787.
 

 *
 

 Mumma
 
 v.
 
 Potomac Co., 8 Peters., 286; Dartmouth College
 
 v.
 
 Woodward, 4 Wheaton, 712; Slee
 
 v.
 
 Bloom, 19 Johnson, 474; Riddle
 
 v.
 
 Locks and Canals, 7 Massachusetts, 185; McLaren
 
 v.
 
 Pennington, 1 Paige’s Chancery, 107; Lincoln
 
 v.
 
 Kennebec Bank, 1 Greenleaf, 79; Navigation Co.
 
 v.
 
 Coon, 6 Pennsylvania State, 379; Com.
 
 v.
 
 Cullen, 13 Id. 133; Sprague
 
 v.
 
 Railroad, 19 Id. 174; Joy
 
 v.
 
 Jackson Co., 11 Michigan, 155.
 

 †
 

 Cooley on Constitutional Limitations, 279; Binghamton Bridge Case, 3 Wallace, 51; Piqua Bank
 
 v.
 
 Knoop, 16 Howard, 369; Vincennes University
 
 v.
 
 Indiana, 14 Howard, 268; Planters' Bank
 
 v.
 
 Sharp, 6 Id. 301.
 

 ‡
 

 Railroad
 
 v.
 
 Dudley, 14 New York, 354; Plank Road
 
 v.
 
 Thatcher, 1 Kernnan, 102.
 

 *
 

 Revere v. Copper Co., 15 Pickering, 351; Attorney-General
 
 v.
 
 Clergy Society, 10 Richardson’s Equity, 604.
 

 *
 

 Bailey v. Hollister, 26 New York, 112; Sherman v. Smith, 1 Black, 587.
 

 *
 

 Hascall
 
 v.
 
 Madison University, 8 Barbour, 174.
 

 †
 

 Ward
 
 v.
 
 The Society of Attorneys, 1 Collyer Chancery Cases, 377.
 

 *
 

 State
 
 v.
 
 Adams, 44 Missouri, 570.
 

 †
 

 Railroad v. Canal Co., 21 Pennsylvania State, 22.
 

 ‡
 

 Allen
 
 v.
 
 McKeen, 1 Sumner, 299.
 

 *
 

 People v. Manhattan Co., 9 Wendell, 351; Roxbury v. Railroad Co., 6 Cushing, 424; White
 
 v.
 
 Railroad, 14 Barbour, 559.
 

 †
 

 3 Wharton, 566.
 

 ‡
 

 State
 
 v.
 
 Miller, 2 Vroom, 521; Story
 
 v.
 
 Jersey City et al., 1 C. E. Green, N. J., 13.