STATE, *ex rel., et al. v.* U. S. GRANT UNIVERSITY *et al.*

(*Knoxville.*   September Term, 1905.)

1. **CORPORATIONS.**   Educational corporation is dissolved by conveyance of its property and franchises to another educational corporation, for the payment of its debts, and cannot sue, when.

Where an educational corporation conveys and transfers its franchises, powers, and privileges to another educational merger corporation, and conveys all its property to an educational aid or auxiliary corporation in consideration of the payment of its debts, with the provision and agreement that the property is to be conveyed by the said auxiliary corporation to the said educational merger corporation, when it is financially able to operate and carry on the school, and upon its refunding to the auxiliary corporation the money expended in payment of said debts, and delivers the possession of the property to the said merger corporation, the conveying corporation, both under the common law and under our statutes, by its such conveyance, worked a dissolution and terminated its existence, and cannot afterwards maintain a suit, especially more than five years afterwards under our statutes. (*Post. pp.* 240-255.)

Code cited and construed: Secs. 2070, 2071, 2525 (S.); secs 1719, 1720, 1984 (M. & V.); secs. 1492, 1493 (T. & S. and 1858).

Acts cited: 1875, ch. 142.

Cases cited and approved: State v. Bank, 5 Bax., 108, 116, 117, 118; Railroad v. Kyle, 9 Lea, 691; Pennsylvania College Cases, 13 Wall., 190.

Cases cited, approved, and distinguished: College v. Bartlett, 8 Bax., 231; Railroad v. Kyle, 9 Lea, 691; Bache v. Society, 10 Lea, 437; Parker v. Hotel Co., 96 Tenn., 273.

State, ex rel., v. University.

2. **SAME.** Trustee cannot sue when the corporation cannot.

A mere trustee of a defunct corporation cannot maintain a bill in behalf of the corporation where it has no power or right to sue. (*Post, pp.* 255.)

3. **SAME.** Trustee cannot sue, unless he requests the corporation to sue, and it refuses.

A trustee of a corporation cannot sue in its behalf, unless he shows that he has requested it to sue, and that it has refused. (*Post, pp.* 255, 256.)

Cases cited and approved: Gas Co. v. Williamson, 9 Heis., 338, 339; Boyd v. Sims, 87 Tenn., 777, 778.

4. **SAME.** Same. Facts that excuse request of corporation to sue, and not mere conclusions, must be alleged.

A trustee of a corporation cannot maintain a bill in its behalf upon the allegation that an application to it to sue would be useless formality, which is only a conclusion of law, but the facts which excuse such a demand or request must be stated with particularity and definiteness. (*Post, pp.* 256, 257.)

Cases cited and approved: Steiner v. Parsons, 103 Ala., 215; Brewer v. Theater, 104 Mass., 378.

5. **PARTIES TO SUITS.** Intermediate grantee is an indispensable party to conveyor's suit to recover the property and to cancel contract, when.

The educational aid or auxiliary corporation, to which the conveyance of property was made as for the purpose stated in the first headnote is an indispensable party to a suit by the conveyor to recover the property, and to have the contract canceled. (*Post,* p. 257.)

6. **CORPORATIONS.** Amendment to charter of educational corporation that is not fundamental does not require unanimous consent of trustees, but majority only.

An amendment to a charter of an educational corporation for the maintenance of schools of law, medicine, theology, and technology, and an academic department, so as to authorize a col-

lege of liberal arts, literature, and general culture, is merely
auxiliary, and not fundamental, because it does not seek to
change the character of the corporate business, and, therefore,
the unanimous consent of the trustees of the corporation is not
required, but a mere majority is sufficient. (*Post, pp.* 245, 246,
257-259.)

Cases cited and approved: Deaderick v. Wilson, 8 Bax., 108; Mul-
.ler v. Insurance Co., 92 Tenn., 167.

---

### FROM McMINN.

---

Appeal from the Chancery Court of McMinn
County.—T. M. M'CONNELL, Chancellor.

BURKETT, MANSFIELD & MILLER, for complainants.

W. G. M. THOMAS, C. R. EVANS, and WHITE & MARTIN,
for defendants.

---

MR. JUSTICE M'ALISTER delivered the opinion of the
Court.

The general scope of this bill is to enforce certain al-
leged contracts between the Grant Memorial University,
situated at Athens, McMinn county, Tenn., and the U. S.
Grant University, located at Chattanooga, Tenn., or, in
the alternative, to have said contracts canceled, and cer-
tain educational property restored to the possession of
the Grant Memorial University, and, further, to enjoin
the former corporation against interfering with the com-

plainant in the control and management of said property.

The complainants to the bill are the State of Tennessee, on relation of Fisher, Bayless, and the Grant Memorial University. Fisher sues in the capacity of a trustee of Grant Memorial University; Bayless sues as a trustee of the defendant the U. S. Grant University and the Grant Memorial University sues in its own right.

The defendants are the U. S. Grant University, J. H. Race, its president and trustee, and seventeen individuals who are charged to be among the alleged trustees of the complainant Grant Memorial University.

A demurrer was interposed on behalf of all the defendants in the court below; some of its specifications being sustained, and others overruled, by the chancellor. On appeal to this court the cause was assigned to the court of chancery appeals, which tribunal sustained all the assignments of the demurrer and dismissed the bill. Complainants appealed to this court and have assigned errors.

It appears from the allegations of the bill that in the year 1867 a college was located at Athens, McMinn county, Tenn., and placed under the control of the Holston Annual Conference of the Methodist Episcopal Church. This institution was given power by its charter to purchase, acquire, and hold property for educational purposes at or near Athens. The original act of incorporation provided that the charter members should be trustees, and vacancies therein occurring from time to time

115 Tenn.—16

should be filled by the Holston Annual Conference of the Methodist Church. The bill further charged that said trustees acquired property at a cost of $7,200, which sum was raised by donations, for the purpose of establishing a university for higher educational purposes. In 1868 the corporate name of the institution was changed to the East Tennessee Wesleyan University. In 1886 its name was again changed to the Grant Memorial University, and under this name it was conducted up to 1892. It further appears from the bill that in 1886 another college was established at Chattanooga under the patronage of the Methodist Church, which was known and designated as Chattanooga University, and from 1886 to 1889 this university conducted departments at Chattanooga. Another corporation figures in this litigation which was known as the Freedman's Aid & Southern Educational Society, which was also an auxiliary of the Methodist Church. It was incorporated about the close of the civil war, and its object was to extend financial aid to schools connected with the Methodist Church. It was soon discovered that the operation of the two universities under the auspices of the same church in such close proximity to each other would, because of their rivalry, tend to impair the usefulness and prosperity of both institutions, and the idea was conceived of founding a central university, to be composed of the two colleges, and which would operate both under a division of departments at the two places. The college of liberal arts, the departments of law and medicine, under the plan of unifica-

State, ex rel., v. University.

tion, was to be located at Chattanooga, while the school of theology and the school of technology were to be at Athens, with academic departments of each grade at each place. It is then charged that, to carry out this plan, in 1889 the U. S. Grant University was incorporated under the act of 1875, and was located at Chattanooga, Tenn. In 1889-90, the Chattanooga University already mentioned conveyed all its property and franchises to the new U. S. Grant University. In 1892 the complainant corporation, namely, the Grant Memorial University, conveyed its properties, etc., to the Freedman's Aid & Southern Educational Society, upon its assumption of the payment of the debts of the former, which was afterwards done. It is stated in the bill that this conveyance was made to the Freedman's Aid Society, with the understanding that this property was to be conveyed to the new U. S. Grant University when the latter corporation became financially able to carry on both schools. It further appears from the bill that in 1892, at the time the Athens University conveyed its property to the Freedman's Aid Society, it also transferred its franchises, powers, and privileges to the new U. S. Grant University. It further appears that the last election of trustees from the Athens University by the Holston Annual Conference occurred in 1892, and in that year, by the unanimous consent of these trustees, the franchises and entire property of the Athens University were conveyed as already stated. It further appears that since 1892 there has been no meeting of the trustees of the

Grant Memorial University, and no attempt on their part to interfere with the operations of the new U. S. Grant University. It should be further stated that on June 7, 1892, the charter of the U. S. Grant University was amended in the following language: "For the purpose of vesting said corporation with the power as follows: The school of theology, the school of law the school of medicine and the school of technology shall be located at Chattanooga, Tenn., with academic departments of equal grade at each place, and such other departments of equal grade at each place, and such other departments as may hereafter be determined by the board of trustees."

The bill then charges:

"This amendment was made June 7, 1893, and, as a result thereof, the right to a college of the liberal arts at Chattanooga was surrendered, and it was contemplated that a school of theology, law, medicine, and technology should be established at Chattanooga, and that the university at Athens as originally organized, contemplated, and maintained should be left intact. When this action was taken, the school of theology was transferred to Chattanooga and the school of liberal arts at Chattanooga was abandoned, the right to maintain a school of technology at Athens was surrendered, and the right to establish a school of technology at Chattanooga was constituted. Complainants charge that, as a result of the long agitation and controversy, it was finally directed, agreed upon, and determined that the defendant cor-

State, ex rel., v. University.

poration should have the right to operate the two schools at Athens and Chattanooga as a consolidated university, and on condition only of the division of the departments just mentioned, to wit, the professional schools and the school of technology at Chattanooga, and the university with its adjuncts at Athens. With this full and final understanding and with this solemn contract, complainant corporation permitted the defendant corporation to take charge of, and possession of its property at Athens, and of which it had possession and control, for the purpose of maintaining a university along the lines of consolidation agreed upon as aforesaid, and with the full belief that said settlement was entered into in good faith and would likewise be carried out, and for that reason, and there being no question for further corporate action, the trustees of the complainant corporation have, since this action was taken, had no meetings, and have permitted the defendant corporation to operate the university at Athens."

It will be observed that these allegat' ons of the bill are entirely destitute of any designation of the contracting parties, nor is is stated therein when and where the alleged contract was made, nor its terms set out with any degree of definiteness.

However, in 1903, the charter of the U. S. Grant University was again amended, and the power was conferred "to establish and maintain, in connection with the colleges of law, medicine and theology, a college of liberal arts, literature and general culture, with the power to

confer degrees in Chattanooga." This amendment is attacked by the bill, and for the reason that it was not applied for unanimously by the twenty-one trustees. Eight of the twenty-one trustees did not sign the application, and this attack raises the question whether such charter amendment must be made by the unanimous consent of all the trustees, and whether all must sign the application. This is a sufficient statement of the case to indicate the relevancy of the demurrer interposed to the bill.

Complainants are confronted at the threshold of this investigation with serious obstacles in the pathway of each and all of them in maintaining this bill. The Grant Memorial University cannot maintain this bill, since it was one of the constituent corporations that became merged in the consolidated corporation, the U. S. Grant University.

The record discloses that in 1892 the Grant Memorial University, by the unanimous consent of its board of trustees, conveyed all of its property to the Freedman's Aid and Southern Educational Society, in consideration of the assumption and payment by the latter of the corporate debts of the former. These debts were accordingly paid off and discharged by the Freedman's Association. Contemporaneously with the last conveyance, the Grant Memorial University, by the unanimous consent of its trustees, surrendered all of its franchises, good will, etc., to the consolidated corporation. The new corporation into which the constituents corporations had become merged, accepted the transfers, and, since 1892

up to the filing of this bill in 1904, a period of twelve years, has conducted the educational affairs of the old corporation without complaint or legal interference from either of them.

We think, upon the facts stated, the Grant Memorial University is not entitled to maintain the bill, and the principles stated in the *Pennsylvania College Cases,* reported in 13 Wall., 190, 20 L. Ed., 550, are controlling.

We quote from a digest of that case from Hirschel on Combinations, Consolidation, and Succession of Corporations as follows:

"Jefferson College, chartered under the laws of Pennsylvania, was subject to having its charter altered by the legislature. Thereafter, in 1865, by consent of its own trustees and the trustees of Washington College, the two were consolidated, their funds united into one, and the new college made liable for all the liabilities and scholarships of each of the old; but certain parts of the course were still pursued at Jefferson and the rest at Washington. Then, in 1869, by another act of legislature, the several departments were closely united, and the trustees authorized to locate them all at one or the other colleges, and to give an academy or some other institution to the town from which the college was removed. Accordingly, the entire college was established at Washington. The removal was sought to be prevented by the trustees of Jefferson College, to which respondents pleaded that the complainants, as trustees, had accepted the acts of the legislature, and hence their corporation became dis-

solved by the creation of the new corporation. The court finds that the legislature had the right to change the charter, for the right to do so was reserved, and finds also that such right, even if not reserved, can be exercised with consent of the corporations affected thereby, and that such consent existed; finds also that by the creation of the new, the old colleges were still to exist as institutions of learning, and that by the act of legislature the two original corporations became merged in one corporation created by said acts, and that neither of the original corporations is competent to sue for any cause of action subsequent in date to their acceptance of the new act of incorporation.

"The case of the dissenting trustees of the new corporation is disposed of on the same grounds, and the case of the scholarship holders of the Jefferson College, who complained that by its removal they were subjected to greater inconvenience in making available their scholarships, is disposed of on the same ground, viz., that the right to change the charter was reserved to the legislature, and moreover was consented to by the corporation, in which case the scholarship holders cannot complain, as they have no contract with the State, and hence they cannot complain that the State had passed any law impairing a contract. Their contract was with the trustees and not with the State, and was subject to the State's reserved right to alter the charter of the college. The existence of a contract between the college and the scholarship holders can certainly not have the effect of inhibit-

ing the legislature from altering, modifying or amending the charter of the corporation by virtue of a right reserved to that effect, or with the assent of the corporation, if, in view of all the circumstances, the legislature should see fit to exercise that power." Hirschel, 215; *Pennsylvania College Cases,* 13 Wall., 190, 20 L. Ed., 550.

The language of the court was, viz.:

"Authorized as the act of the legislature was by the reservation contained in the original charter, and sanctioned as the act was by having been adopted by the corporators, it is clear to demonstrate that the act uniting the two colleges was a valid act, and the two original corporations became merged in the one corporation created by the amendatory and enabling act passed for that purpose, and that neither of the original corporations is competent to sue for any cause of action subsequent in date to their acceptance of the new act of incorporation."

It is insisted by learned counsel for appellant that this case is to be distinguished from the *Pennsylvania College Cases* in these important particulars:

(1) There has been no act on the part of the State and no merging of the corporations. It is insisted that the complainant corporation has preserved its existence and its entity, and is simply endeavoring to set aside the illegal and voluntary amendment to defendant's corporation charter, or, in default thereof, to enforce the contract under which it obtained possession of complain-

ant's property.  It is suggested the bill does not show that complainant corporation had parted with its franchises, and does not show that it had parted with its property, but simply shows a nonuser for a term of years because the property was being operated in compliance with the contract hereinbefore set out.  It is insisted that the demurrer and the opinion of the court of chancery appeals ignored the charge in the bill that complainant corporation was the equitable owner of its real estate, and that it simply turned it over to defendant corporation to be operated under a specific contract.

Counsel cite *Maryville College* v. *Bartlett,* 8 Baxt., 231; *Bache* v. *Nashville Horticultural Society,* 10 Lea, 437; *Rogersville, etc., R. R.* v. *W. C. Kyle,* 9 Lea, 691; *Parker* v. *Bethel Hotel Co.,* 96 Tenn., 273, 34 S. W., 209, 31 L. R. A., 706; Shannon's Code, section 2070.

But these cases are not applicable here, for the reason that in neither of them did it appear that the corporation had conveyed the legal title and all equitable interest in its property, together with all its corporate franchises, power, good will, etc.  An examination of the cases cited will show that they are to be differentiated from the present case in these particulars.  We are of opinion, however, that the ruling of the supreme court of the United States in the *Pennsylvania College Cases* is applicable in the present instance.  In the first place, we understand the bill to charge that there had been a union or merger of the Grant Memorial University and the Chattanooga University into a corporation created un-

der the act of 1875 and known as the U. S. Grant University. It is conceded in the bill that this action was taken by and with the consent of the trustees of both the old corporations, and there was an acceptance of this union by the U. S. Grant University. It appears that this consolidation of the two old corporations into the U. S. Grant University occurred in 1892, and since that date neither of the old corporations has elected a board of trustees or exercised any other corporate function. We understand it to be conceded by the bill that in 1892 the Grant Memorial University transferred its real estate to the Freedman's Aid and Southern Educational Society, and that at the same time it transferred its franchises, etc., to the U. S. Grant University with the understanding that when the latter university was financially able to operate and carry on the school at Athens and Chattanooga, then the Freedman's Aid and Southern Educational Society was to transfer the real estate, not to the Grant Memorial University, but to the new U. S. Grant University, which should refund to the Freedman's Aid and Southern Educational Society the money the latter society had expended in paying off the debts of the old Grant Memorial University. It thus appears from the allegations of the bill that the old Grant Memorial University conveyed the legal title of all its real estate to the Freedman's Aid and Southern Educational Society, and all equitable interest which it had in said property, together with all its corporate franchises, power, etc., to the U. S. Grant University.

It is claimed in the bill, however, that the general assembly did not reserve the right to amend the charter of the East Tennessee Wesleyan University, which was succeeded by the Grant Memorial University, and that there was no general act in force in 1892 which authorized the Grant Memorial University to transfer its property to the Freedman's Aid and Southern Educational Society, and its franchises, etc., to the U. S. Grant University.   But the draftsman of the bill was clearly in error in both of these assumptions, which will appear upon an examination of the charters and constituent acts of assembly in force at the time of the transfer in 1892.   It appears that the East Tennessee Wesleyan University, the predecessor of the Grant Memorial University, was incorporated by private charter prior to the general incorporation act of 1875, but that said corporation thereafter accepted the benefits of the act of 1875 by an amendment of the original charter.   It further appears that the Chattanooga University was incorporated under the act of 1875, as was also the U. S. Grant University. This latter act also reserved the power to change and amend the charter.

This new corporation accepted the trust and has since been managing and controlling both of the old schools. All this was done by and with the consent of both of the old schools.   We think the principle is well established that a corporation has a right to surrender its property and franchises and when it is done with the consent of the State the identity and corporate entity of the former

is lost.  The parties now complaining are the surrendering corporation and one of its trustees, together with a trustee of the consolidated corporation, and it is very obvious that all of these parties are bound by the terms of the amalgamation.

Complainants claim in their brief that, when the Grant Memorial University deeded its property to the Freedman's Aid and Southern Educational Society, the property was merely conveyed to said society to hold as trustee until the Grant Memorial University was financially able to resume the operation of the college at Athens.

It suffices to say in respect of this contention, that it has no anchorage in the allegations of the original bill. On, the contrary, it is distinctly stated in the original bill that in 1892 the Grant Memorial University transferred its real estate to the Freedman's Aid and Southern Educational Society, and that at the same time transferred its franchises, etc., to the U. S. Grant University, with the understanding that when the latter corporation was financially able to carry on both schools, then the Freedman's Aid Society was to transfer the real estate, not to the old Grant Memorial University, but to the new U. S. Grant University, which latter corporation was to refund to the Freedman's Aid Society the money with the latter society had expended in paying off the debts of the old Grant Memorial University.

In addition to common-law principles, there are also statutory reasons why complainant Grant Memorial University cannot maintain this bill.

It is provided by section 2525 of the Code, in dealing with corporations created for the general welfare and not for profit, as follows:

"The members may, at any time, voluntarily dissolve the corporation by a conveyance of its assets and property to any other corporation holding a charter from the State, for the purpose not of individual profit, first providing for corporate debts."

This is precisely what was done in 1892 by the unanimous action of the trustees of the Grant Memorial University. It conveyed the entire assets and corporate property to the Freedman's Aid and Southern Educational Society, admittedly an educational institution, and at the same time it abdicated its functions as a separate educational institution, and conveyed to the consolidated corporation its entire franchises, etc. As evidence that both of the old corporations regarded themselves is dissolved no corporate meetings of either have, since that time, been held, nor have their boards transacted any business. Moreover, the annual conference of the Methodist Episcopal Church, under whose patronage these corporations were both organized and maintained, had elected no trustees for either of the old and extinct corporations since 1892.

Again, section 2070 of Shannon's Code provides:

"Whenever powers, franchises and privileges have so been granted to a corporation and they are not used, or are assigned to others in whole or in part, such corporations shall not be dissolved unless all the corporate prop-

erty has been appropriated to the payment of its debts."

As already stated, the power, franchises, and privileges of the Grant Memorial University have not been used since 1892, and have been assigned to others, after having made provision. for the payment of its corporate debts.

By section 2071 of the Code it is provided that:

"Any such corporation dissolved for any cause shall exist as a body corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits by or against it, and settling its business."

In the case of *Railroad* v. *Kyle,* 9 Lea, 691, this court held that "the sale of realty at the suit of the State to enforce its statutory lien dissolved the corporation, and that a suit brought by the corporation more than five years after dissolution could not be maintained." *State* v. *Bank,* 5 Baxt., 108, 116, 117, 118.

So that, for all these reasons, we are clearly of opinion that this bill cannot be maintained by the Grant Memorial University, a defunct corporation. A mere trustee of the corporation would possess no higher right, and hence, R. J. Fisher, trustee of Grant Memorial University, has likewise no status for the prosecution of such a suit. Moreover, it does not appear that complainant Fisher has made any demand upon any one of these corporations to prosecute such a suit. It is well settled that a trustee of one corporation cannot sue another corporation, unless he shows that he has asked his own corporation to sue for the alleged injury done to it by the

other, and that it has refused. *Boyd* v. *Sims,* 87 Tenn.,
777, 778, 11 S. W., 948; *Gas Co.* v. *Williamson,* 9 Heisk.,
338, 339.

The only remaining complainant is J. W. Bayless,
who sues as trustee of the U. S. Grant University, who
has made no application to his corporation or its trus-
tees or officers to bring suit. He excuses his failure to
make such demand for the following reasons:

"He [Bayless] charges that an application to the de-
fendant corporation for such redress has not been made
by him since the last meeting of the board of trustees of
defendant university, and it would be a vain and useless
formality and waste of both paper and ink to make any
application to them whatever, as a majority of the board
of directors of said college are dead set on establishing a
school of the liberal arts at Chattanooga, and to the ex-
tent of injuring and breaking down the university at
Athens, and no appeal to them outside of a decree of the
court would be effectual whatever."

But it will be observed that no facts are stated show-
ing that his associates in said board have done any act
or used any language showing that an appeal to them
would be an idle ceremony, but the dissenting director
or trustee contents himself with the statement of a mere
opinion on his part. The rule on this subject is thus
stated by Mr. Cook, in his work on Corporations (volume
2 [4th Ed.], 741): "When the corporation manage-
ment is under control of directors who are acting in a dif-
ferent manner concerning corporate affairs from that in

State, ex rel., v. University.

which the complainant directors think they should act, no request need be made or alleged, since the guilty parties would not comply with the request, and even if they did the court would not allow them to conduct the suit against themselves. · Nevertheless, instead of this allegation, the complainant must allege the facts which excuse such a demand or request to the directors, and these facts must be stated with particularity and definiteness." In *Steiner* v. *Parsons,* 103 Ala., 215, 13 South., 771, it was stated on this subject that: "The allegations of these facts must be statements of fact and not conclusions of law. The manner in which the directors are interested must be pointed out." See, also, *Brewer* v. *Boston Theater,* 104 Mass., 378.

Again, we think the Freedman's Aid and Southern Educational Society is an indispensable party defendant to this proceeding. As already stated, it is admitted in the bill that in 1892, the Athens corporation did surrender its property to the Freedman's Aid and Southern Educational Society, and conveyed to it the legal title. We are unable to perceive how complainant can have this property restored and the contract for the surrender of its power, franchises, and privileges to the consolidated corporation canceled, and the original *status quo* restored, without the joinder of such a party defendant.

The ninth assignment of error is based upon the action of the court of chancery appeals in sustaining the ninth ground of demurrer, to that portion of the bill which attacks the validity of the amendment to the charter of

115 Tenn.—17

the U. S. Grant University made on the —— day of ——,
1903. This amendment authorized the new university to
"establish and maintain, in connection with the colleges
of law, medicine, and theology, a college of liberal arts,
literature and general culture, with power to confer de-
grees, in Chattanooga."

The bill attacks the validity of this charter amendment
upon the ground that it should have been applied for by
all the twenty-one trustees, whereas eight of that number
did not join in the application. The demurrer proceeds
upon the idea that the amendment is given without the
unanimous application of the trustees.

The argument advanced on behalf of the appellant in
opposition to the action of the court of chancery appeals
is that, at the date of the unification of the two corpora-
tions, an amendment to the charter had been adopted,
which provided that the school of liberal arts should be
located at Athens and the other school at Chattanooga.
It is insisted this constituted a contract between the cor-
poration and its incorporators, and between the corpor-
ation and its trustees. It is then said that the new cor-
poration in 1903 attempted to violate its charter and the
contracts made in consideration thereof, and by the act-
ion of thirteen out of twenty-one directors attempted to
amend its charter so as to vest the defendant corpora-
tion with power to establish a school of liberal arts at
Chattanooga.

We are of opinion, however, that the amendment was
merely auxiliary and not fundamental since it did not

seek to change the character of the corporate business, but merely to establish a department of liberal arts in Chattanooga. This court held in the case of *Miller* v. *Ins. Co.,* 92 Tenn., 167, 21 S. W., 39, 20 L. R. A., 765, that an amendment which does not change the character of the business, and simply authorizes its reasonable extension upon the lines of the original project, is not fundamental, and does not require unanimous consent. A mere majority is sufficient. See, also, *Deaderick* v. *Wilson,* 8 Baxt., 108.

In conclusion it will be stated that, while we did not set out the specifications of the demurrer, it suffices to state that all the questions herein discussed were properly raised thereon, and for the reasons stated the decree of the court of chancery appeals will be affirmed.