The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Clifford.

Filed Feb. 28, 1888.

---

No. 12,461.

## THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILROAD COMPANY *v.* CLIFFORD.

RAILROAD.—*Amendment of Charter.*— *When Valid.*—After vested rights have been acquired, the charter of a corporation can not be so amended as to impair them, unless the power to amend is expressly reserved; but where the original and amendatory acts are passed at the same session of the Legislature, with only a brief interval between, during which there is no acceptance of the provisions of the original act and no rights are acquired thereunder, the amendatory act is valid.

SAME.—*Failure to Complete Road Within Time Prescribed.*—*Rights of Land-Owner.*—The failure of a railroad company to commence or complete

The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Clifford.

its road within the time prescribed by its charter is a breach of a duty owed to the State, and does not entitle a private citizen, after the road has been completed for a number of years, to recover possession of land taken for a right of way.

SAME.—*Remedy of Land-Owner.—Law Governing.—Act of Incorporation.*—The remedy of a citizen whose land has been taken for railroad purposes is to be sought under the law in force at the time of the entry, and is not limited to the provisions of a previous act under which the railroad company was incorporated.

SAME.—*Trespass.—Damages.—Ejectment. — Estoppel.* — If the entry by the railroad company is unlawful, it is a trespasser, and an action for trespass may be maintained; or, if the entry is without right, and possession is wrongfully withheld, ejectment will lie, unless, by some act or omission, the land-owner has precluded himself from asserting his right to possession.

SAME.—*Verdict in Ejectment.—Description of Land.*—Where, in an action for the possession of land, the complaint claims title to one hundred and twenty acres, but the other pleadings and the answers of the jury to interrogatories show that only a narrow strip is in controversy, a verdict reading "We, the jury, find for the plaintiff and assess his damages at forty-two dollars," is not sufficient to enable the court to render the proper judgment, and a *venire de novo* should be granted, it being necessary in such a case, under sections 564 and 579, R. S. 1881, that the verdict should describe the property.

JUDICIAL NOTICE.—*Public Laws.—Acts of Incorporation.*—The public laws of a State are before its courts without being pleaded or inserted in a record, and to this class belongs an act, declared to be a public one, incorporating a railroad company.

SUPREME COURT.—*Reversal of Judgment.—Evidence not in Record.*—If the evidence is not in the record, the Supreme Court will not reverse the judgment, if, upon any supposable state of facts relevant to the issue, the rulings of the trial court were right.

VERDICT.—*Interrogatories.— Presumptions.*—No presumptions will be indulged in aid of answers to interrogatories, but reasonable intendments will be made in favor of the general verdict, and, unless there is an irreconcilable conflict, judgment must go upon the latter.

From the Fayette Circuit Court.

*R. D. Marshall* and *W. C. Forrey,* for appellant.

*R. Conner* and *H. L. Frost,* for appellee.

ELLIOTT, J.—The appellee in his complaint asserts a right to the possession of one hundred and twenty acres of land, and avers that the appellant has possession of it without

right.    The complaint seeks possession of the land, and not compensation, except in so far as damages are an incident of the right of possession.    The action must, therefore, be treated as purely a possessory one, and on that theory we must examine and decide all the questions presented by the record.

The second paragraph of the answer of the appellant alleges that, on the 11th day of February, 1848, the General Assembly passed an act incorporating the Junction Railroad Company and authorizing it to construct a railroad from Indianapolis, Indiana, to Hamilton, Ohio; that it located its road through the appellee's land soon after the act was passed, and, pursuant to the power conferred by its charter, took a strip of ground one hundred feet in width; that the Junction Railroad Company and the appellant, as its successor, have since been in possession; that the appellee had full knowledge of the entry and seizure, and did not file any claim for damages, as required by the charter of the corporation.    To this answer the appellee replied these facts:    The General Assembly, on the 15th day of February, 1848, passed an act requiring the Junction Railroad Company to commence the construction of its railroad within four years from that date, and to complete it within ten.    Neither the Junction Railroad Company nor the appellant, as its successor, did begin the construction of the railroad within ten years. The entry was not made until 1867.    No compensation was paid the appellee by either of the corporations.

The contention of appellant's counsel is, that the reply is bad for the reason that the amendatory act of February 15th, 1848, is in conflict with the Constitution.

The general rule undoubtedly is, that, after vested rights have been acquired, the charter of a corporation can not be so amended as to impair those rights, unless the power to amend or repeal is expressly reserved.    The rule that a charter granted to a private corporation is a contract has a firm place in our jurisprudence, and to that rule courts must

yield.  But, in stating the general rule and affirming its
validity, we do not decide the question which here faces us.
An element enters here not usually found in the adjudged
cases.  The original act and the amendatory act were passed
at the same session of the General Assembly.  An interval
of only four days elapsed between the adoption of the orig-
inal act and the adoption of the amendatory act.  There was
no acceptance of the original act, and no rights were, so far
as the record discloses, acquired under it prior to the passage
of the act amending it.

Our conclusion upon this point is, that where the original
and amendatory acts are both passed at the same session, with
an interval of four days elapsing between them, and there is
no acceptance of the provisions of the original act, nor any
rights acquired under them during that interval, the amenda-
tory act is valid.

The rule forbidding the amendment or repeal of charters
granted to private corporations, rests upon the theory that
vested rights will be destroyed and the obligations of a con-
tract impaired by the amendment or repeal.  At the founda-
tion of the rule is the assumption that the charter is a con-
tract.  With the fall of this assumption falls the rule.  This
assumption must fall unless there be present the elements of
a contract.  The absence of these elements saps the founda-
tion which alone gives support to the rule.  In this case
those elements are absent.

Much older and quite as well settled as the rule prohibit-
ing the repeal of charters, is the rule that private organiza-
tions can not be compelled to accept a charter.  No association
can be erected into a private corporation by the act of the
Legislature alone.  Public corporations may be erected by
the Legislature without the consent of the corporators;
private corporations can not be so created.  Acts constituting
an acceptance must be performed before the act of the Leg-
islature is transformed into a contract.  Until there is an ac-

ceptance, either by express words or by conduct, the act of the Legislature is nothing more than a mere proposition.

Through all the law of contracts runs the principle that a proposition may be modified or withdrawn before it is accepted. This principle applies to propositions from the sovereign as well as from the citizen. In support of our conclusion we refer to *State, ex rel.,* v. *Dawson,* 16 Ind. 40; Field Corp., section 30.

We are, however, unable to find any principle upon which the appellee can take advantage of the failure of the corporation to commence or complete its road within the time prescribed by the act of February 15th, 1848. The lapse of time and the intervention of other rights than those of the corporation, make it doubtful whether the State could take away the corporate rights of the successor of the original corporation; but however this may be, a private citizen can not accomplish that object by a possessory action. It was more than thirty years after the expiration of the time fixed for the completion of the railroad before the right of the appellant was assailed. We are entirely clear that the appellee, at least, can not avail himself of the failure of the corporation to complete its railroad, and wrest from it the possession of the strip of land occupied by it for the purpose of maintaining and operating its railroad. Even had there been no acquiescence on the part of the appellee or the State, the former could not have availed himself of the failure of the corporation to perform its duty. That duty was owing to the State, and not to individuals, and the State alone has a right to enforce that duty or sue for its breach. It would be subversive of principle and productive of great evil to permit private citizens to recover possession of land, and thus break the line of a railroad engaged in the public service, upon the ground that the corporation had not done what the law required it to do, unless what it was required to do affected private rights. Principle and authority are against the

The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Clifford.

appellee upon this point. *Logan* v. *Vernon, etc., R. R. Co.*, 90 Ind. 552, and cases cited; *Jussen* v. *Board, etc.*, 95 Ind. 567.

It would be strange, indeed, if a citizen could bring an action in ejectment, and, upon the ground that the corporation had not performed a duty due from it to the State, wrest from it a strip of ground forming part of its roadway, and acquired by it under color of authority conferred by its charter.

Our argument, it is true, proceeds upon the assumption that the duty enjoined by the amendatory act was owing to the State; but the assumption is so plainly just that it can not be controverted. All that need be done to establish it is to affirm, what no one will deny, that, so far as concerned any private rights, except those of the corporation, the Legislature might at any time have relieved the corporation from the duty, enjoined by that act, of completing its road within ten years from the passage of the law. If it could do this, then it is perfectly clear that no citizen had any private right that could constitute the foundation of an action, for, if he had, the Legislature could not take it from him. Doubtless, private rights may be granted land-owners by a corporate charter, but no such rights are created by the amendatory act of February 15th, 1848.

The reply is not made good by the allegation that neither the appellant nor its predecessor began the construction of a railroad within four years after the passage of the amendatory act; nor is it made good by the allegation that the railroad was not constructed within ten years from that time. But we think it may be sustained on other grounds.

The answer pleads as a defence the failure of the appellee to demand compensation in the manner prescribed by the charter of the Junction Railroad Company. This is the theory of the pleading. There is no claim of license, nor any claim that compensation was paid; the sole claim is, that there can be no recovery because the land-owner did not file his claim

for compensation with the secretary of the corporation, as the special charter provided.

We are strongly impressed with the belief that the answer is bad, for we can not perceive upon what principle a right of entry could accrue before payment or tender of compensation. This, as it seems to us, was a condition precedent, which it was beyond the legislative power to exempt the corporation from performing. But, waiving the question of the sufficiency of the answer, and, for the purpose of this discussion, conceding its sufficiency, we adjudge the reply to be good. We rest our conclusion on the fact that the reply avers that there was no entry until 1867. So far as the remedy is concerned, the law then in force rules the case. The principle is well settled that a remedy may at any time be changed by the Legislature. A change in the form of the remedy is not an encroachment upon a vested right, for the plain reason that no one can have a vested right in a remedy. In this instance there was a change, both by the Legislature and by the Constitution of 1851, in the form of the remedy. Indeed, it may well be doubted whether, under the present Constitution, there can be a special remedy where the right is a general one. It is, however, only necessary for us to decide that there was a change in the remedy, and that the Legislature had the constitutional power to make this change.

In *Maynes* v. *Moore,* 16 Ind. 116, the court quoted with approval Judge Story's statement that "No one will doubt that the Legislature may vary the nature and extent of remedies, so always that a substantial remedy exists." In many cases this rule has been asserted and enforced. By other courts it is recognized, and by them it has been applied to such cases as this. *McCrea* v. *Port Royal R. R. Co.,* 3 South C. 381 (16 Am. R. 729); *Baltimore, etc., R. R. Co.* v. *Nesbit,* 10 How. (U. S.) 395; *Spring Valley Water Works Co.* v. *Schottler,* 110 U. S. 347; *Long's Appeal,* 87 Pa. St. 114; *United Companies* v. *Weldon,* 47 N. J. 59 (54 Am. R. 114).

If the appellee, under the law as it existed at the time of

the entry on his land, had a right to sue for possession, the provision in the charter of 1848 ceased to be exclusive, even if it ever possessed that character. The remedy at the time the entry was made may be invoked, for it was then that the cause of action accrued. The law then in force authorized an action for possession. The law as it then was, and still is, may be thus stated: Where a railroad corporation enters upon land without right, it is a trespasser, and an action may, if seasonably prosecuted, be maintained against it to recover damages resulting from the trespass. If the entry is without right, and possession is wrongfully withheld, an action for possession will lie, unless, by some act or some omission, the land-owner has precluded himself from asserting his right to possession.

The counsel for appellant are, therefore, in error in assuming that the only remedy of the land-owner is that given by statute. He is not confined to that remedy, but, in the proper case, may prosecute an action for damages or for possession. *Indiana, etc., R. W. Co.* v. *Allen, post,* p. 581, and cases cited; *Indiana, etc., R. W. Co.* v. *Allen, ante,* p. 308; *Midland R. W. Co.* v. *Smith, ante,* p. 233; *Pittsburgh, etc., R. W. Co.* v. *Swinney,* 97 Ind. 586, and authorities cited.

The general right to maintain ejectment exists in all such cases, but it is a right that may be lost by acquiescence, and, perhaps, in other ways.

The appellee's counsel insist that we can not consider the questions sought to be presented on the instructions, because the evidence is not in the record. In support of this general proposition, it is said that the act of 1848 is not in the bill of exceptions, although referred to by the bill. This position is not tenable. That act is declared to be a public one, and there was, therefore, no necessity for incorporating it in the bill of exceptions. The public laws of a State are before its courts without being pleaded or inserted in a record.

A much more formidable reason, however, is adduced in

.support of this general position, and authorities are cited that sustain it. We are referred to the record showing that an ·exhibit was introduced in evidence, and it is also shown that this exhibit is not in the bill·of exceptions. We can not ignore the fact that there was an exhibit put in evidence, for the record expressly declares that it was; nor can we overlook the fact, so strongly pressed upon our attention, that the exhibit thus made an instrument of evidence is not properly in the record. If it had not been put in evidence, although referred to by the witnesses, a different question, requiring a different ruling, would be presented, but it was put in evidence. It is true that there is an exhibit attached ·to the record, but it is not in the bill, nor is provision made for it by the words "here insert;" it only appears as a paper attached to the record, and appears, too, after the certificate of the clerk. The authorities settle this question against the appellant, and we must yield to them. *Irwin* v. *Smith,* 72 Ind. 482, and cases cited, pp. 488, 489; *Chambers* v. *Butcher,* 82 Ind. 508; *Sanders* v. *Farrell,* 83 Ind. 28, and cases cited; *Brehm* v. *State,* 90 Ind. 140; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31, 36; *Marshall* v. *State, ex rel.,* 107 Ind. 173, 176.

We can not say that the instructions were not proper under a state of facts relevant and material under the pleadings, and we can not, in the absence of the evidence, examine them for any other purpose. It has long been the rule in this State, that if the evidence is not in the record the court will not reverse, if, upon any supposable state of facts relevant to the issue, the rulings of the court were right. *Hunt* v. *Adamson,* 2 Ind. 641; *Baltimore, etc., R. R. Co.* v. *Rowan,* 104 Ind. 88, and cases cited.

The claim of appellant that it is entitled to judgment on the answers of the jury to interrogatories can not be sustained. It is well settled that the judgment must go upon the general verdict and not upon the answers, unless there is an irreconcilable conflict between them. It is equally well

The Cincinnati, Hamilton and Indianapolis Railroad Co. *v.* Clifford.

settled that no presumptions will be indulged in aid of the answers, but, on the contrary, that reasonable intendments will be made in favor of the general verdict. *City of Green-field* v. *State, ex rel., post,* p. 597, and cases cited; *Rice* v. *City of Evansville,* 108 Ind. 7, and cases cited.

If the answers of the jury showed that the appellee had acquiesced in the occupancy and use of his land for a considerable period, and until after the public had acquired rights, we should hold that he could not maintain this action. *Indiana, etc., R. W. Co.* v. *Allen, supra,* and cases cited; Mills Eminent Domain, 140. But the answers do not show that there was ever any railroad constructed on the appellee's land; much less do they show any acquiescence. It is true that they show that a survey was made, but it is well settled that an entry for that purpose does not entitle the owner to maintain an action. From such an entry no right of action accrues. Mills Eminent Domain (2d ed.), section 36. But if they did show an entry it would not be enough, for it must further be shown that there was a use and an acquiescence. It is true, also, that the answers show the use of lands near those of the appellee, but they show no such use of appellee's land.

The truth is, that the interrogatories were framed upon the theory that the failure to demand compensation in the manner prescribed by the act of 1848 deprived the appellee both of his land and his right to compensation, and the answers elicited do not state facts sustaining the theory of acquiescence now put forward by the appellant's counsel. If the original theory had been sound, the answers might have been of benefit to the appellant, but it is not, and the answers do not sustain the theory now advanced.

The verdict of the jury reads thus : " We, the jury, find for the plaintiff, and assess his damages at forty-two dollars." The appellant's counsel insist that this verdict is insufficient, and that the motion for a *venire de novo* should have been sustained. We so hold.

There is some conflict in the authorities as to whether the verdict should describe the property in ordinary possessory actions. Sedgwick & Wait Trial of Title to Land, sections 497, 498.

We do not, however, enter this field of conflict, for the reason that the case before us presents unusual features. The complaint claims title to one hundred and twenty acres of land, but the other pleadings show that only a narrow strip is in controversy. This appears, also, from the answers to interrogatories. It was legally impossible, therefore, for the court to render the proper judgment, and a verdict not sufficient for this purpose must be set aside. The code provides that the judgment "must be in conformity to the verdict," and that it "shall specify clearly the relief granted." Sections 564, 579, R. S. 1881. In a case like this, these requirements of the law can not be carried into effect unless the verdict describes the property.

This objection is not answered by the cases which hold that where the defendant appears and answers he admits that he was in possession of the land claimed. *Holman* v. *Elliott*, 86 Ind. 231; *Voltz* v. *Newbert*, 17 Ind. 187.

These cases simply enforce a plain statutory provision, but they do not meet the question here presented. The question here is: What must the verdict contain in order to enable the court to pronounce judgment upon it? In pronouncing judgment, the court must look to the pleadings and other parts of the record as well as to the verdict, and unless the verdict authorizes the court to specify the relief granted it can not be sufficient. We are unable to perceive how it is possible to specify the relief which the record requires, without a more definite verdict.

The provision of the code referred to in the cases cited does not, in reality, apply directly to the verdict, although it may do so incidentally, for it simply declares that "Where the defendant makes defence, it shall not be necessary to

prove him in possession of the premises." R. S. 1881, section 1056. This provision applies directly to the evidence, and it is only by construction that it can be made to do more. We do not believe any principle will justify us in extending it beyond matter of evidence in such a case as that before us, if, indeed, it be proper to do so in any case.

One great requisite of a judgment in an action for the possession of land is, that the description shall be so specific as to enable the sheriff to put the plaintiff in possession. *Loard* v. *Philips*, 4 Sneed (Tenn.), 565. It is difficult to perceive how a judgment could be framed upon a verdict such as that before us that would enable the sheriff to do this, and if no such judgment can be framed, then the verdict must be defective, for the judgment must follow the verdict.

We can see no escape from the conclusion that the verdict, as the record presents this particular case, is radically defective.

Judgment reversed, with instructions to sustain the motion for a *venire de novo.*

