STATE EX REL. MILLIGAN, SUPERINTENDENT OF MADISON STATE HOSPITAL *v*. RITTER'S ESTATE.

[No. 27,872. Filed May 20, 1943.]

458

460

George N. Beamer and James A. Emmert, Attorneys General, James P. Wason and Frank E. Coughlin, Deputy Attorneys General, and Frank Hamilton, First Assistant Attorney General, for appellant.

Willis Hickam, of Spencer, and Barnes, Hickam, Pantzer & Boyd, of Indianapolis, for appellee.

FANSLER, J.—The appellant filed a claim against the estate of Howard L. Ritter, deceased, seeking to recover the sum of $5,583.00 for the treatment and maintenance of the decedent from March 6, 1917, to March 29, 1940. The claim was disallowed and transferred to the trial docket, where it was submitted to a jury for trial without the formality of an answer. The case was tried upon the theory that the right to a recovery is controlled by statute. The substantial controversy concerned the applicability and effect of certain statutes and amendments as will hereafter appear.

Construing the statutes involved, the court concluded that the plaintiff was entitled to recover only from June 10, 1935. The rate of compensation for this period is definitely fixed by the statute, and there was no dispute as to the number of weeks involved, and the amount of compensation was agreed to be $1,249.29. The court excluded testimony offered by the plaintiff concerning the care and maintenance of the decedent for each year beginning with 1917 and down to and including June 9, 1935. There was no controversy about the facts. The controversy in the trial court and here involves only a construction of the statutes.

After the court had refused to hear evidence involv-

ing the prior periods, the plaintiff filed a motion in writing for a directed verdict for $1,249.29, the amount admittedly due under the evidence admitted. The motion was sustained and there was a verdict and judgment accordingly. The appellant filed a motion for a new trial, assigning the eighth statutory cause for a new trial: "Error of law occurring at the trial, and excepted to by the plaintiff, as hereinafter set out, to wit: . . ." Five separately numbered assignments are set out, the first four specifying error in excluding, and sustaining objections to, evidence offered as to the treatment, maintenance, and care of the decedent from 1917 to 1935. The fifth recites that by reason of the exclusion of the evidence referred to "the plaintiff was harmed to the extent of several thousand dollars and the amount of recovery was diminished to that extent, and the amount of recovery was too small." The motion for a new trial was overruled, and error is assigned here upon that ruling.

The appellee contends that the motion for a new trial presents no question for review, since the appellant's only complaint is that the court excluded certain evidence which, if admitted, might have increased the recovery; that if the ruling upon the offered evidence was erroneous, it was harmless unless it resulted in a recovery that was too small, and that the only way to present error in the amount of recovery is by the fifth statutory cause for a new trial, which is: "Error in the assessment of the amount of recovery, whether too large or too small. . . ." We cannot agree with this contention. The amount of the recovery is admittedly correct upon the evidence which was admitted. The fifth statutory cause for a new trial refers to error in fixing or computing the amount of recovery upon evidence which has been admitted for the con-

sideration of the court or jury trying the case. Where the trial is by jury, error in fixing the amount of the recovery is the jury's error, but where evidence of certain phases of the claim is erroneously excluded and not permitted to go to the jury, it is the error of the court. It is obvious that, under the evidence admitted, the amount of the recovery is correct. The error which prejudiced the appellant's substantial rights was the exclusion of the evidence and not the computation of the amount of recovery. In ruling upon the admission of evidence the trial court decided the only substantial question presented below, and, by assigning error upon the court's ruling thereon, the appellant has sufficiently presented that question here. The fifth numbered assignment in the motion for a new trial was designed to show that the error assigned was prejudicial. It was not a separate assignment of error.

The appellee also contends that the appellant cannot be heard to question the correctness of the judgment rendered, or of any of the rulings leading up to that judgment, for the reason that the judgment is what he requested by his written motion. Appellee says: "What a party expressly asks the court to do, when done, cannot be available as error, however erroneous such action may be, without a violation of the plainest principles of the law." As supporting this contention, he cites *McMahan* v. *McMahan* (1895), 142 Ind. 110, 40 N. E. 661, and *Gray* v. *Gray et al.* (1931), 202 Ind. 485, 176 N. E. 105. The "invited error" principle is the basis for the rule that appellee seeks to invoke, but the quoted language is too broad. If a demurrer to a complaint is sustained the plaintiff may refuse to plead further and request the court to enter judgment against him so that he may have a basis for appeal without waiving the error or being

charged with having invited it. In the instant case the plaintiff proceeded upon the theory that he was entitled to recover much more than the amount of the judgment. The trial court disagreed and excluded his offered testimony, which would have required a larger verdict and judgment. When he had put in all of the evidence which the court permitted, he was entitled to a judgment for the amount proved without waiving his right to a review of the court's ruling which excluded him from recovering a greater amount. If the ruling of the trial court should be sustained on appeal, he had judgment for that to which he was admittedly entitled. If the decision of the trial court was erroneous, he was entitled to more. His motion for a directed verdict invited the court to fix the amount to which he was entitled upon the evidence admitted, as a matter of law, upon the theory that there was but one verdict which the jury might lawfully return. The court sustained this view, and it is not asserted here that there was any error in this respect, nor is the appellant complaining of any such error. The error complained of is the ruling excluding evidence which, if legally admissible, would have required a much larger verdict and judgment. This error was not invited by the appellant. The *McMahan* case, *supra*, was a divorce case. The defendant, who was the appellant, proposed a finding and decree by written motion. The court sustained the motion and entered the finding and decree as requested. The error sought to be presented arose out of a motion to modify a judgment and decree which had been superseded by the one requested by the appellant. It was held that the error was not available. The substance of the decree submitted is not disclosed, but it must be concluded that the mere preparation of an order-book entry embodying a decree consistent

with the announced theory and indicated decision of the court would not amount to inviting error. In the *Gray* case, *supra,* the appeal was dismissed upon the ground that there was no final judgment, and that it was perfected too late as an appeal from an interlocutory order. The statements relied upon by the appellee are *obiter dictum,* but it is clear that the court was not considering a question of invited error. It is pointed out that the appellant was granted everything he asked for in his interlocutory petition. The court concluded that where a party is granted everything that he asks in his basic pleading there is no error, invited or uninvited.

The appellant called Dr. Milligan, superintendent of the hospital, as a witness, and offered to prove by him that the decedent received treatment in the hospital, and the cost of the treatment. Objection was sustained. Although the objection was not made below, the appellee now contends that the evidence was properly excluded because the witness was a necessary party to the issue or the record, and was therefore not a competent witness as to the matters embraced in the questions because of § 2-1715, Burns' 1933, § 304, Baldwin's 1934. We cannot agree. In a comparable situation in *Works et al.* v. *State ex rel. Holland, Auditor* (1889), 120 Ind. 119, 22 N. E. 127, it was held that the auditor, who was the relator, was not a party in interest within the meaning of the statute in an action to foreclose a school fund mortgage.

A determination of the merits involves a consideration of the statutes governing the care of inmates of insane hospitals. Chapter 67 of the Acts of 1881 (Acts 1881, p. 545) provided that all persons residing in the State and having a legal estab-

lished residence in one of the counties of the State should be treated and maintained in the insane hospital at the expense of the State. Chapter 217 of the Acts of 1889 (Acts 1889, p. 391) amended and supplemented the former act by providing for the collection of the expense of care and maintenance from the estates of inmates under certain conditions. Chapter 17 of the Acts of 1891 (Acts 1891, p. 21) repealed the supplemental provision of the act of 1889 providing for collection from the estates of inmates, leaving no provision for such collection. In *Board of Com'rs of Montgomery County* v. *Ristine, Adm'r* (1890), 124 Ind. 242, 243, 244, 24 N. E. 990, 991, it was held that the 1881 statute "looks to the protection of the public from those whose insanity makes them dangerous to the community. It has in it no feature of charity to the individual, nor was it enacted with a view to benevolence." Chapter 56 of the Acts of 1917 (Acts 1917, p. 142), approved March 5th, provided that all persons having a legal settlement in the State should be entitled to care in the State's benevolent institutions, including hospitals for the insane, and further provided that nonresidents, presumably including all those not having a legal settlement in the State, might be admitted to these institutions under certain prescribed conditions. Chapter 72 of the Acts of 1917 (Acts 1917, p. 176) is entitled, "An Act to provide for payment of cost of care in benevolent institutions from the property or estates of inmates, in certain cases." It was approved March 6th, and provides that the estates of *all* inmates of insane hospitals not needed in whole or in part for the support of the husband, wife, children, parents, grandparents, grandchildren, brothers or sisters of the patients shall be liable for the expense of the state incurred in their treatment and maintenance, in an amount not to exceed

$4.00 per week. Chapter 9 of the Acts of 1925 (Acts 1925, p. 19) amended chapter 72 of the Acts of 1917 by fixing the maximum amount of compensation at $5.00 per week. Chapter 69 of the Acts of 1927 (Acts 1927, p. 179) is entitled, "An Act concerning insanity inquests, the procedure in adjudging persons insane, the commitment of insane persons to hospitals for insane, their care pending admission, their discharge therefrom, the apprehension and return of insane patients and prohibiting the kidnapping or aiding the escape of insane persons." Section one provides that inmates of insane hospitals who are residents of the State of Indiana and have a legal settlement in any county of the State shall be maintained and cared for at the expense of the State. Section one of this act on its face seems to repeal the Act of 1917 as amended in 1925, and by chapter 89 of the Acts of 1929 (Acts 1929, p. 288) the section was amended so as to reestablish the liability of the estates of inmates for care and maintenance, but in 1931 and 1933 the Act of 1917 was expressly amended, and it was expressly repealed in 1935, thus indicating a legislative view at these three sessions that the Act of 1917 was still in force. In view of this legislative attitude we have examined the titles of chapter 72 of the Acts of 1917 and chapter 69 of the Act of 1927 is too specific and narrow to cover the act of 1927 is too specific and narrow to cover the subject-matter of the Act of 1917. Both titles are specific. Neither covers the general subject of insanity or institutions for the insane. The 1917 title is limited to payment for care in benevolent institutions out of the estates of inmates. The 1927 title is limited to the subject of inquests and the procedure in adjudging persons insane, their commitment to hospital, their care pending admission, their discharge, their apprehension

and return upon escape, and prohibiting their kidnapping or aiding to escape. There seems to have been purposely omitted any matter dealing with the period between admission and discharge from the institution. There is nothing in this title suggesting that the act might deal with payment for care of inmates, but, on the contrary, the seemingly intentional limitation to the period preceding admission and following discharge or escape indicates an intention not to deal with the period of confinement. It is well settled that where titles are limited, provisions of the law not within the limitation are void under the Constitution, and it must be concluded that insofar as section one of the Act of 1927 may have been designed as an implied repeal of chapter 72 of the Acts of 1917 it is void. An act amending a void act is also void, and therefore chapter 89 of the Acts of 1929 must be treated as void. The Act of 1917 was amended by chapter 66 of the Acts of 1931 (Acts 1931, p. 152) by eliminating the words "in charge of a trustee or guardian, which estate." We are not concerned with this amendment, since the decedent was under guardianship. The amending act was amended by chapter 174 of the Acts of 1933 (Acts 1933, p. 882) by adding provisions requiring the clerk of the court ordering the commitment to take certain action. This amendment in no way affects the liability. The title of chapter 132 of the Acts of 1935 (Acts 1935, p. 476) is substantially identical with the title of chapter 72 of the Acts of 1917. The act provides for a charge against the estates of inmates, and, insofar as the policy of collecting from such estates is concerned, no substantial change is made. The Act of 1917 exempted that part of an inmate's estate "needed for the support in whole or in part of the husband, wife, children, parents, grandparents, grandchildren,

brothers or sisters of such person." The 1935 Act eliminated grandparents, grandchildren, brothers and sisters from this list. The Act of 1917 provided that the reimbursement of the State should not exceed $4.00 per week, while the Act of 1935 fixed the liability at $5.00 per week, subject to a provision that the Governor with the Attorney General is authorized to accept a lesser payment in certain cases. There are further new provisions for collection of amounts due, and a specific repeal of the Act of 1917 and amendments thereto.

The court below seems to have concluded that this specific repeal wiped out liability for care and maintenance accruing prior to the enactment of the statute of 1935. Section 1-307, Burns' 1933, § 13, Baldwin's 1934, provides: ". . . the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force for the purposes of sustaining any proper action or prosecution for the unfortunate of such penalty, forfeiture or liability." The appellant says that the obligation of the estate to pay is a liability within the meaning of this statute. The appellee contends that the *ejusdem generis* rule applies; that "penalty" and "forfeiture" are words of particular description; that "liability" is a general word, and, there being no manifest intention to the contrary, the general word must be construed as applicable to things of the kind designated by the particular words. The appellee cites *Taylor* v. *Strayer et al.* (1906), 167 Ind. 23, 30, 78 N. E. 236, 238, in which it is said that it is manifest that the statute in question "has no application to any feature of this case, but only relates to penalties, forfeitures and

kindred liabilities." This conclusion is not developed further. The statute involved in that case made specific provision for saving certain drainage proceedings which had been initiated. The court evidently concluded that there was a legislative intention not to save others not mentioned. Following the statement above quoted, the opinion says that it was the prerogative of the Legislature to embody the policy that met with its approval, and to repeal existing laws upon that subject, unhampered by any of the statutes mentioned. This seems to indicate a conclusion that even though there were a liability involved it was the express intention of the Legislature to strike it down. In the case of *Wise et al.* v. *McKeever, Trustee* (1916), 184 Ind. 686, 112 N. E. 765, which involved reimbursement of a township for the cost of a highway under a statute which imposed an obligation on the city and which was repealed, the court held that the obligation was a "liability" within the meaning of the statute in question. It is difficult to conclude that such a liability can be considered as a forfeiture or penalty. The *Taylor* case is not referred to. The statute provides that the repeal shall not have the effect "to release or extinguish any penalty, forfeiture or liability incurred." The word "penalty" is broad enough to cover all penalties, and the word "forfeiture" is broad enough to cover all forfeitures. If the word "liability" is held to refer only to some form of penalty or forfeiture, it adds nothing to the statute and is mere surplusage, while if it is treated as referring to liabilities other than penalties and forfeitures it is not surplusage. By well established rules we are required to give all words of a statute some meaning if possible. *McQuaid et al.* v. *State ex rel. Sigler* (1937), 211 Ind. 595, 6 N. E. (2d) 547.

There is an additional reason which requires the conclusion that the 1935 statute was not intended and designed to strike down accrued liability for care and maintenance. It is true that there is an express repeal of the Act of 1917, but it is equally true that there is no departure from the policy of reimbursement for the care of patients, and no indication of an intention to abolish the State's right to reimbursement. The former statute is substantially reenacted. The new statute increases the liability in two respects, (1) by reducing the exemption by eliminating parts of the estate needed to support brothers and sisters and grandparents and grandchildren, and (2) by fixing the reimbursement at the definite sum of $5.00 per week. Rules of construction are designed to aid in determining the legislative intention, and the statute above referred to was designed to indicate the legislative intention where none is expressed or necessarily implied. But where the legislative intention is clear, resort will not be had to such means. In *Gorley* v. *Sewell* (1881), 77 Ind. 316, 320, 321, it is said: "It does not require an express saving clause to prevent the destruction of rights existing under former statutes. If the intention to preserve and continue such right is clearly apparent, it will be carried into effect." The Supreme Court of Wisconsin is quoted to the effect that: " 'When the Legislature re-enacted the same provision, and provided for its taking effect at the same time as the repeal of the old statute, it is clear that they intended to continue such provision in force without interruption.' " It is true that the approval of this quotation was qualified. In *Arnett, Controller,* v. *State ex rel. Donohue* (1907), 168 Ind. 180, 191, 80 N. E. 153, 156, it is said: ". . . a repealing clause, like any other provision of the statute, is

to be subjected to rules of construction, and the intent will prevail over the literal import of the words." And in *Indianapolis Union Railway Co. et al.* v. *Waddington, Adm'r* (1907), 169 Ind. 448, 453, 82 N. E. 1030, 1032, we said: "Even an express declaration of a repeal will not be given that effect when it is apparent that the legislature did not so intend." This principle is recognized in *Pittsburgh, C., C. & St. L. R. Co.* v. *Oglesby et al.* (1905), 165 Ind. 542, 76 N. E. 165, and *Taylor* v. *Strayer et al., supra.* It is inconceivable that the Legislature intended to increase the amount of compensation and decrease the exemption to estates beginning with the effective date of the act, and wipe out all liability for care and maintenance for patients being treated just prior to the effective date. Notwithstanding the repealing clause, we conclude that it was the legislative intention that the former act should be effective and continue in force for the purpose of determining the amount of compensation for care and maintenance prior to the effective date of the new act, and that the new act was intended to be effective prospectively only. It follows therefore that the court erred in excluding the testimony as to the cost of care and maintenance under the 1917 Act as amended.

The decedent left a sister surviving. The appellant had the burden of proving that the decedent's estate was not needed in whole or in part for the support of this sister. *Bahr, Superintendent,* v. *Zahm et al.* (1941), 219 Ind. 297, 37 N. E. (2d) 942. There was evidence sufficient to take the case to the jury upon this question.

Judgment reversed, with instructions to grant a new trial, and for further proceedings not inconsistent herewith.

NOTE.—Reported in 48 N. E. (2d) 993.