**Felicia Dawn SENFF, b/n/f Terri R. Senff, Plaintiff-Appellant,**

v.

**ESTATE OF Steven E. LEVI, Defendant-Appellee.**

No. 82A01-8705-CV-112.

Court of Appeals of Indiana, First District.

Nov. 23, 1987.

Rehearing Denied Jan. 18, 1988.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Gerald G. Fuchs, Evansville, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Felicia Dawn Senff b/n/f Terri R. Senff (Terri), appeals a judgment of the Vanderburgh Superior Court in favor of defendant-appellee, the Estate of Steven E. Levi (the Estate), following a bench trial on Terri's suit to establish Felicia's paternity.

We reverse.

## STATEMENT OF THE FACTS

Terri met Steven Levi (Steven) in mid–1984 and they began dating. At the time, Terri was 14 years old and a runaway. She was living with a friend, Linda Greenlee, but in October 1984 Terri moved in with Steven and his family, which consisted of his mother, Pearl, his brother, and his two sisters. While Terri was living there, her mother came by and attempted to persuade Pearl to become Terri's legal guardian. Pearl declined the offer and, in November 1984, Pearl asked Terri to move out for failing to abide by her household rules. From the Levi home Terri went to live with Steven's father, Jack Stanton. She stayed there one week and then moved in with another friend, Phyllis Wiley. In January 1985, Terri was taken into custody by the police for being a runaway. She then went to live with her father. On September 19, 1985, Terri gave birth to a daughter, Felicia Dawn. Steven died on December 5, 1985. When Terri applied for welfare, she was told that she could be denied public assistance unless she sought to have Felicia's paternity established. Terri cooperated and a paternity petition was filed against the Estate, alleging Steven was the father of Felicia.

A one-day bench trial was held on November 19, 1986. Terri testified and related the above facts, although she said she moved out of the Levi home because of a disagreement she had with Pearl concerning Patty Mitchell, who is the mother of a son fathered by Steven. Terri also testified that soon after Felicia was born she took her to the Fulton Bar, where Pearl was employed. Pearl held Felicia and told the bar patrons Felicia was "her granddaughter." *Record* at 86. Terri attempted to testify of her relationship with Steven, but the Estate successfully objected by invoking the so-called dead man's statute.[1] The next witness, Linda Hall, testified that she knew Steven for 1½ years, from seeing him two or three times a week when he would come in to the market where she works as a cashier. Hall was asked to relate a conversation that she had with Steven shortly before he died, but she was prevented from doing so by the Estate's objection on hearsay grounds. Terri's father testified that he had found Terri and Steven in bed together in September 1984, whereupon he had made Steven leave. Terri's father also stated he had never seen Terri with anyone other than Steven during the time period in question. Terri's mother testified that she had visited Terri several

---

1. IND.CODE 34–1–14–6.

times at the Levi home and seen Terri and Steven in bed together on two occasions. Terri's mother expressed her disapproval to Pearl, who replied that she "would try to keep them apart." *Record* at 118. Two friends of Terri, Ramonda Durham and Rosie Stanton, also testified. The former related the incident at the Fulton Bar when Pearl referred to Felicia as "my granddaughter." *Record* at 123. The latter witness stated she never saw Terri with anyone other than Steven during the pertinent time period. Pearl, who is the personal representative of the Estate, also testified. She stated she took Terri into her home because she was trying to help Terri, but she made Terri move out for failing to follow household rules. Pearl testified she never saw Terri and Steven in bed together, she denied that Felicia is Steven's daughter, and she denied referring to Felicia as her granddaughter. The Estate called no witnesses. Instead, it moved for a judgment on the evidence, which was granted. Terri then instituted this appeal.

### ISSUES

Terri presents the following issues, claiming the trial court erred in:

I. Sustaining the Estate's objection to Terri's testimony on the basis of IND. CODE 34–1–14–6, the dead man's statute; and

II. Sustaining the Estate's objection to Linda Hall's testimony on hearsay grounds.

### DISCUSSION AND DECISION

ISSUE I: *Dead Man's Statute*

At trial Terri attempted to testify of her relationship with Steven, but the Estate successfully prevented this testimony on the basis of IND.CODE 34–1–14–6.

IND.CODE 34–1–14–6, the dead man's statute, provides:

> In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during a [sic] lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate: Provided, however, That in cases where a deposition of such decedent has been taken, or he has previously testified as to the matter, and his testimony or deposition can be used as evidence for such executor or administrator, such adverse party shall be a competent witness for himself, but only as to any matters embraced in such deposition or testimony.

In general, the purpose of the statute is to prevent false claims against an estate by establishing a rule of mutuality: when the lips of one party are closed by death, the lips of the other party are closed by law. *Satterthwaite v. Estate of Satterthwaite* (1981), Ind.App., 420 N.E.2d 287.

A witness is rendered incompetent under IND.CODE 34–1–14–6 when the following requirements are met:

a. The action must be one in which an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor;

b. It must involve matters which occurred within and during the lifetime of the decedent;

c. It must be a case in which a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator;

d. The witness must be a necessary party to the issue and not merely a party to the record;

e. The witness must be adverse to the estate and must testify against the estate.

*Given v. Cappas* (1985), Ind.App., 486 N.E. 2d 583, 587, *trans. denied.* Our resolution of this case depends upon requirement e.

An interest which would render a witness incompetent is one by which the witness will gain or lose by the direct, legal operation of the judgment. *Satterthwaite, supra.* The interest must be real, present,

certain, and vested; a bias or sentiment is not sufficient to cause a witness to be incompetent. *Id.*

■ Terri argues she should have been allowed to testify because she possesses no interest adverse to the Estate. We agree.

Pursuant to IND.CODE 31–6–6.1–2(a), a paternity petition may be filed on behalf of an incompetent by a guardian, guardian ad litem, or, as was done here, next friend. Under IND.CODE 31–6–6.1–2(b) or IND. CODE 31–6–6.1–3, the county welfare department or the state, respectively, may also act as the illegitimate child's representative. Under any of the statutes the child remains the real party in interest, and the purpose served by any representative is the same. *T.R. v. A.W. by Pearson* (1984), Ind. App., 470 N.E.2d 95, *trans. denied.* In *State ex rel. Milligan v. Ritter's Estate* (1943), 221 Ind. 456, 465, 48 N.E.2d 993, 996, the supreme court held that merely because a statute authorizes a person to bring an action in a representative capacity, such person is not necessarily a party with an adverse interest within the meaning of the dead man's statute.

In addition, pursuant to IND.CODE 31–6–6.1–6(d), a paternity action must be filed during the lifetime of the alleged father, or within five months after his death. For purposes of inheritance IND.CODE 29–1–2–7(c) provides:

The testimony of the mother may be received in evidence to establish such paternity and acknowledgment but no judgment shall be made upon the evidence of the mother alone. The evidence of the mother must be supported by corroborative evidence or circumstances.

Although at the time Terri initiated paternity proceedings IND.CODE 29–1–2–7(c) did not apply to paternity proceedings filed within five months after the alleged father's death, such is no longer the case. Section 3 of 1987 Ind. Acts Pub.L. No. 50–1987 added IND.CODE 29–1–2–7(b)(1)(B), to allow the mother to testify in paternity proceedings filed within five months after the alleged father's death. While this recent enactment is inapplicable to the instant case, it evinces a legislative intent that a mother's testimony should be admitted despite the putative father's demise. *See State ex rel. Shoemaker v. Han's Administrator* (1865), 23 Ind. 539.

Here, Terri brought the action in a representative capacity on behalf of Felicia. Terri did not join the action as an individual and she is making no claim against the Estate on her own behalf. Terri herself will not gain or lose by the direct legal operation of the judgment. The dead man's statute is not to be construed so as to give one party the power to deprive another of important testimony by making parties of those who have no adverse interest. *Satterthwaite, supra.* Moreover, the fact that a witness may have a similar claim against the estate does not necessarily disqualify him as a witness for another claimant. *Given, supra.*

■ The Estate argues Terri has not preserved error because she failed to make an offer of proof at trial. However, an offer to prove was not necessary. Where the objection is to the right of the witness to testify at all, the party introducing such witness need not state what he expects to prove, because the question for the trial court to decide is not as to the competency of the testimony, but the competency of the witness himself. *Satterthwaite, supra,* and cases cited therein at 292. The dead man's statute, IND.CODE 34–1–14–6, deals with the competency of witnesses, so Terri was not required to make an offer of proof in order to preserve the issue.

Because Terri possesses no interest adverse to the Estate, it was error for the trial court to exclude her testimony. Accordingly, we reverse its ruling on this issue.

ISSUE II: *Hearsay Testimony*

Linda Hall attempted to testify at trial concerning a conversation with Steven held shortly before his death. The Estate's objection on hearsay grounds was sustained. Terri's argument that the testimony was admissible as an admission was unavailing.

■ An admission is a statement against the interests of a party which is inconsistent with a defense or tends to establish or disprove a material fact. *Breese v. State* (1983), Ind.App., 449

N.E.2d 1098, *trans. denied; State ex rel. Langdon Hospital, Inc. v. Indemnity Insurance Co.* (1965), 138 Ind.App. 492, 211 N.E.2d 322, *trans. denied.* The fact that Steven is since deceased from the time of the making of the statement does not render it inadmissible. *Uebelhack Equipment, Inc. v. Garrett Bros., Inc.* (1980), Ind.App., 408 N.E.2d 136; 12 *I.L.E. Evidence* § 131 (1959). The trial court erred in excluding Linda Hall's testimony.

■ However, Terri failed to make an offer to prove, which is required when an objection is sustained to a question asked on direct examination. *Lipner v. Lipner* (1971), 256 Ind. 151, 267 N.E.2d 393; *Carroll v. Ely* (1980), Ind.App., 398 N.E.2d 1364; Ind.Rules of Procedure, Trail Rule 43(C). Therefore, Terri has not preserved any error regarding the exclusion of Linda Hall's testimony.

Because the trial court erred in excluding Terri's testimony on the basis of IND. CODE 34-1-14-6, we must reverse its ruling and remand this cause for a new trial.

Judgment reversed and remanded.

RATLIFF, C.J., and ROBERTSON, J., concur.