FGS ENTERPRISES, INC., Appellant
(Defendant Below),

Linley E. Pearson, Attorney General of
Indiana, Appellant (Intervenor),

v.

Thomas SHIMALA and Lynn Shimala,
Appellees (Plaintiffs Below).

No. 75S00–9206–CV–483.

Supreme Court of Indiana.

Dec. 21, 1993.

Kathryn D. Schmidt, George W. Carberry, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellant-defendant.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, for appellees-plaintiffs.

Linley E. Pearson, Atty. Gen., John T. Roy, Deputy Atty. Gen., Indianapolis, for appellant-intervenor.

DICKSON, Justice.

This is a direct appeal[1] from trial court determinations that (1) the 1978 repeal of the Indiana General Corporation Act's reservation of powers clause, allowing the legislature to alter a corporate charter by amending state law, was not an inadvertent clerical error and (2) the retroactive restoration of the clause in 1986, as applied to the present parties, was contrary to the Contracts Clause of the United States Constitution.

Plaintiffs–Appellees Thomas and Lynn Shimala filed a three-count complaint against Defendant–Appellant FGS Enterprises, Inc. ("FGS"), alleging that the FGS board of directors declared a reverse stock split,[2] reducing the Shimalas' 162 shares to a 0.66942 fractional share, and that FGS thereafter obtained this fractional share, leaving the Shimalas with no interest in the corporation. Count I of the plaintiffs' complaint seeks a judgment declaring the acts of FGS to be *ultra vires* and void. The Shimalas contend that FGS's acts were based upon an unconstitutional retroactive application of legislation modifying the FGS articles of incorporation. The complaint's other counts seek relief alternative to the claim of unconstitutionality and are not involved in this appeal. Following motions for summary judgment by both the plaintiffs and the defendant, the trial court entered summary judgment for the Shimalas.

In this appeal, FGS contends in part that its utilization of the applicable statutory provisions to effect the reverse stock split was proper because the reserved powers clause in the Indiana General Corporation Act survived despite an inadvertent clerical error showing it repealed. In its ruling upon the motions for summary judgment, the trial court held that the repeal was not an inadvertent clerical error and that the subsequent legislative attempt to retroactively reverse the repeal was unconstitutional.

■ Reserved powers clauses are often utilized in general corporation laws to enable legislatures to make periodic changes in corporate law which then automatically supercede pre-existing corporate charters. Following *Trustees of Dartmouth College v. Woodward* (1819), 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629, which held that a corporate charter was a contract and that a new law attempting to change a charter would unconstitutionally impair the obligations of the contract, state legislatures began enacting provisions in their general corporation laws expressly retaining the power to effect future amendments or repeals. *Looker v. Maynard* (1900), 179 U.S. 46, 21 S.Ct. 21, 45 L.Ed. 79. These provisions were known as reservation of powers clauses. Any corporation incorporated under a law containing a reservation of powers clause was deemed to have consented, *ab initio*, to future amendments or repeals. *In re Pennsylvania College Cases* (1871), 80 U.S. (13 Wall.) 190, 20 L.Ed. 550. Indiana has long recognized that a corporation's charter may not be amended or materially modified by the legislature unless that power is expressly reserved. *City of Terre Haute v. Evansville & T.H.R.R.* (1897), 149 Ind. 174, 46 N.E. 77; *The Cincinnati, H. & I.R.R. v. Clifford* (1888), 113 Ind. 460, 15 N.E. 524.

1. Ind. Appellate Rule 4(A)(8) gives the Supreme Court exclusive jurisdiction of "appealable cases where a state or federal statute has been declared unconstitutional in whole or in part."

2. A reverse stock split is the reduction in the number of corporate shares outstanding by calling in all shares and issuing a smaller number, though the capital of the corporation remains the same. The effect of a reverse stock split is to increase the value of each share. *Black's Law Dictionary* 1320 (6th ed. 1990). The case at bar involved a 242–for–1 split.

The Indiana General Corporation Act was passed in 1929 without any reservation of powers clause but was amended in 1949 to include such a clause:

The right of the General Assembly to alter, amend or repeal this act is hereby expressly reserved, and all corporations formed or coming under this act are subject to such reserved right. If the application of this section to any corporation, person or circumstance is held invalid, the application of such provision to other persons, corporations, or circumstances shall not be affected thereby.

Act of Mar. 8, 1949, ch. 194, sec. 22, 1949 Ind. Acts 656. In 1978, the Indiana General Assembly enacted Public Law Number 2-1978, declaring the repeal of various enumerated statutory provisions (among which was the reservation of powers clause), but without listing the text or title of any of the repealed statutes. Act of Mar. 9, 1978, Pub.L.No. 2-1978, sec. 2325, 1978 Ind. Acts 472. The General Corporation Act was amended in 1986 to restore the reserved powers clause. Act of Feb. 21, 1986, Pub.L. No. 19-1986, sec. 39, 1986 Ind. Acts 552 (repealed 1987). This clause was identical in language to the one enacted in 1949, and was accompanied in part by the following explanation:

The purpose of the general assembly in enacting this section is to correct an error that was made in preparation of Acts 1978, P.L.2, SECTION 2325. The general assembly finds and declares that the inclusion of IC 23-1-12-5 in the list of provisions to be repealed by the Acts 1978, P.L. 2 was a clerical error, and that the General Assembly did not intend to repeal IC 23-1-12-5 when it enacted Acts 1978, P.L. 2.

Act of Feb. 21, 1986, Pub.L. No. 19-1986, sec. 39, 1986 Ind. Acts 552 (repealed 1987). The General Assembly also declared that its reinstatement of the reservation of powers clause in section 39 was to be retroactive to July 1, 1978. Act of Feb. 21, 1986, Pub.L. No. 19-1986, sec. 66, 1986 Ind. Acts 577. The General Corporation Act was then superceded in 1987 by the Indiana Business Corporation Law ("BCL").[3]

FGS was incorporated under the laws of the State of Indiana on March 14, 1983, during the time following the ostensible repeal of the reserved powers clause and before the legislature's attempted correction and restoration in 1986 and 1987. On January 20, 1990, under Ind.Code § 23-1-38-2(4)[4] of the new BCL, FGS adopted a resolution implementing the reverse stock split and thereafter, pursuant to Ind.Code § 23-1-25-4(a)(1),[5] resolved to purchase all fractional shares resulting from the reverse stock split.

The Shimalas contend that at the time of FGS's incorporation, the reserved powers clause had been repealed, that the 1986 legislation did not nullify that repeal, and that without a reserved powers clause in force when FGS was incorporated, the BCL could not authorize FGS to effect the reverse stock split without violating the Contracts Clause.[6] Trial and appellate briefs filed by the Indiana Attorney General urge that the reserved powers clause was not intentionally repealed and that it has remained in effect, without interruption, since its adoption in 1949.

A "repealing clause" is to be interpreted as any other enactment, and the legislative intent will prevail over the literal import of the words. *Arnett v. State ex rel. Donohue* (1907), 168 Ind. 180, 191, 80

---

3. The entire BCL encompasses Ind.Code §§ 23-1-17-1 through 23-1-54-3.

4. Ind.Code § 23-1-38-2(4) states in part:
Unless the articles of incorporation provide otherwise, a corporation's board of directors may adopt one (1) or more amendments to the corporation's articles of incorporation without shareholder action to: (4) Change each issued and unissued authorized share of an outstanding class into a greater number of whole shares or a lesser number of whole shares and fractional shares if the corporation has only shares of that class outstanding....

5. Ind.Code § 23-1-25-4(a)(1) states in part: "A corporation may do any one (1) or more of the following: (1) Issue fractions of a share or pay in money the value of fractions of a share."

6. Constitution of the United States, Article 1, § 10.

N.E. 153, 156. An expression of intent by a subsequent legislature as to the proper construction of a statute is of no judicial force, but in cases of doubt such construction is entitled to respectful consideration and may be given weight by the courts. *Wilson v. State* (1978), 270 Ind. 67, 69–70, 383 N.E.2d 304, 306; *Bettenbrock v. Miller* (1916), 185 Ind. 600, 605, 112 N.E. 771, 773. In the construction of a statute, even an express declaration of a repeal will not be given that effect when it is apparent that the legislature did not so intend. *State ex rel. Milligan v. Ritter's Estate* (1942), 221 Ind. 456, 472, 48 N.E.2d 993, 999; *Indianapolis Union Ry. v. Waddington* (1907), 169 Ind. 448, 453, 82 N.E. 1030, 1032.

The purported repeal of the reserved powers clause occurred in Public Law 2–1978, which consisted of 954 sections spanning 628 pages. A total of 315 statutory provisions were declared repealed by enumeration in 28 sections. Ind.Code § 23–1–12–5, then the citation for the reserved powers clause, was listed as repealed, along with five other sections of the General Corporation Act.[7]

It is significant that during the period of time between the 1978 declared repeal of the reserved powers clause and its 1986 restoration, our legislature passed 37 amendments to the General Corporation Act.[8] If the reserved powers clause is found to have been repealed in 1978, these ensuing enactments would apply only to corporations incorporated before 1978 and would have no effect on post–1978 corporations. We find it wholly implausible that the legislature enacted these changes under such circumstances. Rather, we find that the ongoing modifications of the General Corporation Act are substantial indicators that the legislature was acting upon the belief that the reserved powers clause continued in force. Finally, we give respectful consideration to the General Assembly's declaration in 1986 that the 1978 repeal was a clerical error.

We therefore conclude that the reserved powers clause of the Indiana General Corporation Act was inadvertently included among the various statutory provisions declared repealed by Act of Mar. 9, 1978, Pub.L. No. 2–1978, sec. 2325, 1978 Ind. Acts 472. Because it was not intended by the General Assembly, this repeal was therefore without effect, and the reserved powers clause continued to exist. Thus, there is no issue of retroactive legislation, and the provisions of the 1990 Business Corporation Law may apply to FGS without presenting any issue of unconstitutional impairment of contract. Likewise, because of our determination that the reserved powers clause was not repealed in 1978, we do not address whether the 1986 legislation could retroactively restore a previously repealed enactment.

The trial court's grant of summary judgment is reversed. This cause is remanded to the trial court for further proceedings.

DeBRULER, and SULLIVAN, JJ., concur.

SHEPARD, C.J., concurs in result with opinion.

GIVAN, J., dissents with opinion.

**SHEPARD, Chief Justice, concurring in result.**

Both parties recognize that the constitutional rights of the Shimalas are at stake in this appeal and they largely agree on the formulation of the legal claim before us: does applying the re-enacted reservation of powers statute to the Shimalas violate their constitutional rights under the federal Contract Clause?

---

**7.** Ind.Code §§ 23–1–12–6, 23–1–16–9, 23–2–1–22, 23–2–1–23, and 23–2–1–25.

**8.** From 1978 to 1986, the Indiana General Corporation Law was repeatedly modified with the enactment of 37 changes. These modifications addressed such matters as changes in corporate name, transfer of shares, telephone conference call meetings, minimum number of directors, authority of board of director executive committees to approve contracts and issue shares, authority of one person to serve as both president and secretary, power of corporations to lend funds, merger and consolidation, and voluntary dissolution. *See generally* Ind.Code §§ 23–1–2–1 through 23–1–11–16 (repealed 1987).

Working from briefs in which the parties join this Contract Clause issue very ably, the majority *instead* disposes of the case on the basis of "inadvertence" and "clerical error," legal grounds which have little or no foundation in Contract Clause jurisprudence.*

The *Dartmouth College* case of 1819 and *In re Pennsylvania College Cases*, 1871, are good places to begin the analysis of a Contract Clause claim. Our decision in *Clem v. Christole* (1991), Ind., 582 N.E.2d 780, however, recognized that modern federal Contract Clause law is best described by reference to the principles outlined in *Allied Structural Steel v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), and, we might have said, by its immediate predecessor, *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). The parties before us recognize this reality, and they both provide us with an excellent discussion of those cases.

The U.S. Supreme Court has recognized that absolute application of the Contract Clause would strip modern governments of their ability to adopt general regulatory measures because people could avoid statutes simply by signing contracts. I think the Shimalas' claim should be resolved by acknowledging that the Shimalas' contract rights were impaired. I join in the judgment of the Court, however, because I believe that this impairment occurred as the result of enactments "necessary to meet an important general social problem" and that the law in question was "enacted to protect a broad societal interest rather than a narrow class." *Spannaus*, 438 U.S. at 249, 98 S.Ct. at 2724.

Today's use of clerical error and legislative intent, an intent articulated and divined many years after the fact of repeal, looks like standard legal analysis when examined in a judicial opinion. Examined from the vantage point of the people by whose grace we govern, however, it is pretty unattractive. The General Assembly did actually repeal the reserved powers clause by passing a bill which was signed by Governor Bowen. Citizens like the Shimalas invested their money in business arrangements in reliance on the only law available to them, the law passed by the legislature. I am reluctant to tell such citizens that they now lose those business opportunities because "the legislature said it but they didn't really mean it," and I can imagine future applications of this technique which I hope we will find unacceptable.

GIVAN, Justice—dissenting.

I respectfully dissent to the majority opinion in this case. I cannot agree with appellants in their argument that the repeal of the reserved powers clause in 1978 was a result of a "clerical error." Although the 1986 legislature did make statements to that effect, which are recorded in the journal, it defies reason to believe that the legislature did not understand what they were doing when they repealed the reserved powers clause. This is demonstrated by the fact that the clause remained repealed until 1986. If the 1978 repeal in fact had been accidental and the result of clerical error, it surely could have been discerned readily, and if not corrected in that general session of the General Assembly, it certainly could have been corrected in the succeeding session. To say that a mere clerical error could exist for eight years and then to have the 1986 General Assembly state that the 1978 General Assembly had erred is not an acceptable application of the General Assembly's power to rectify an error.

Under any reasonable hypothesis, it must be determined that for whatever reason or

---

* The cases cited for the proposition that even repealer clauses may be subject to interpretation involve more benign uses of statutory interpretation than the present one. *Indianapolis Union Ry.*, 169 Ind. 448, 82 N.E. 1030 (statute construed to save right of appeal); *State ex rel. Milligan*, 221 Ind. 456, 48 N.E.2d 993 (statute construed to collect support for insane person).

Furthermore, as other authority cited by the majority teaches, such interpretation is only appropriate when the meaning of a statute is doubtful, and later legislative construction cannot control over the express language of a former act. *Bettenbrock*, 185 Ind. at 607, 112 N.E. 771.

possibly however unwise the 1978 General Assembly in fact did deliberately repeal the reserved powers clause in the General Corporations Act. It is true that the expression of a subsequent legislature as to the proper construction of a prior statute is entitled to respectful consideration whenever the meaning of the statute is in doubt. *See Hilligoss v. LaDow, et al.* (1977), 174 Ind.App. 520, 368 N.E.2d 1365. However, the Court of Appeals also observed that:

"5. The expression of a subsequent legislature's opinion as to the proper construction of a statute passed by a previous legislature has no judicial force. The reasons behind this rule as presented in *Bettenbrock v. Miller* (1916), 185 Ind. 600, 112 N.E. 771, are worth restating. First and foremost, the responsibility for construing doubtful statutes is a judicial power which is vested exclusively in the courts of this State. Legislative interference with that judicial function is prohibited by the Indiana Constitution, Art. 3, § 1. It is furthermore the intent of the legislature that passed the act which the court seeks to ascertain, not the intent of a subsequent legislature." *Id.* at 525–26 n. 5, 368 N.E.2d at 1369 n. 5.

In the case at bar, we should presume the intent of the 1978 legislature to be the express repeal of the reserved powers clause. We should not accept the 1986 observation that the 1978 legislature made an inadvertent error.

The decision of the trial court should be affirmed.